UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

Frederick Thomas Allen, MD MBA,
Plaintiff,

v.

NEW JERSEY BOARD OF MEDICAL EXAMINERS;
ANTONIA WINSTEAD, in her official capacity as Executive Director;
J. NIMISHA SHUKLA, M.D., F.A.A.P., in her official capacity as Board Chair,
Defendants.

Civil Action No.: _____

COMPLAINT

JURY TRIAL DEMANDED

## INTRODUCTION

1. This action arises from intentional disability discrimination by a state licensing authority that imposed categorical and medically unjustified restrictions excluding Plaintiff from the practice of anesthesiology based solely on a remote history of substance use disorder, despite overwhelming evidence of fitness for unrestricted practice.

2. Defendants' conduct deprived Plaintiff of meaningful access to a public licensing program, foreclosed employment, and imposed professional exclusion through disability-based stereotypes and punitive assumptions expressly prohibited by federal law.

3. Plaintiff seeks declaratory and prospective injunctive relief, compensatory damages to the extent permitted under Title II of the ADA, and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under federal law.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the acts and omissions giving rise to this action occurred within the State of New Jersey.

## PARTIES

6. Plaintiff Frederick Thomas Allen, MD MBA is a resident of the Commonwealth of Pennsylvania and a physician board certified in anesthesiology, fully trained, credentialed, and qualified to perform all essential functions of anesthesiology practice.

7. Defendant New Jersey Board of Medical Examiners ("Board") is a state agency and a "public entity" within the meaning of 42 U.S.C. § 12131(1).

8. Defendant Antonia Winstead is the Executive Director of the Board and is responsible for implementing and enforcing licensing decisions. She is sued in her official capacity for prospective relief.

9. Defendant J. Nimisha Shukla, M.D., F.A.A.P. is the Chair of the Board and is responsible for oversight and final decision-making authority. She is sued in her official capacity for prospective relief.

## FACTUAL ALLEGATIONS

### A. Disability, Treatment, and Sobriety

10. Plaintiff has a qualifying disability under the ADA consisting of a history of substance use disorder.

11. In January 2022, Plaintiff underwent inpatient substance use disorder treatment at Caron Treatment Centers, followed by completion of structured partial hospitalization (PHP) and

intensive outpatient (IOP) programs.

12. Plaintiff thereafter entered and remained in continuous compliance with a physician health monitoring program and has maintained long-term documented sobriety, verified by objective testing, compliance reports, and longitudinal clinical oversight.

13. Plaintiff was subject to random, unannounced drug testing administered through the New Jersey Physician Assistance Program ("NJ PAP") and related monitoring entities.

14. Plaintiff submitted hundreds of toxicology test results to Defendants, all of which were negative for any non-prescribed or mind-altering substances, and no test ever demonstrated relapse, misuse, or the presence of an illicit or non-prescribed controlled substance.

15. Defendants were further aware that, since 2022, Plaintiff has been continuously treated with extended-release naltrexone (Vivitrol), an FDA-approved medication for the treatment of opioid use disorder, which substantially reduces relapse risk and opioid craving.

16. Plaintiff communicated to Defendants, including during proceedings and discussions at a Physician Executive Committee ("PEC") meeting, his commitment to remain on Vivitrol as part of his long-term recovery and patient-safety plan.

17. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2).

### B. Qualifications and Clinical Clearance

18. Plaintiff is board certified in anesthesiology, has completed accredited residency training, and possesses the education, licensure, clinical experience, and professional competence necessary to perform the essential functions of an anesthesiologist.

19. Plaintiff submitted to Defendants multiple independent clinical evaluations conducted by qualified addiction medicine and substance-use disorder specialists.

20. Each evaluator concluded, without qualification, that Plaintiff poses no increased risk to patients, is medically and psychiatrically fit to practice anesthesiology, and requires no restriction, including no restriction on access to controlled substances.

21. These evaluations were current, individualized, evidence-based, and consistent with national medical standards.

22. Among the materials submitted to Defendants was a professional recommendation from Dr. Louis Baxter, M.D., the Medical Director of the New Jersey Physician Assistance Program ("NJ PAP"), who reviewed Plaintiff's treatment history, monitoring compliance, and clinical status and concluded that Plaintiff was appropriate for the practice of anesthesiology without categorical restrictions.

23. Defendants disregarded Dr. Baxter's recommendation without explanation and imposed restrictions directly contrary to the conclusions of the State's own designated physician health program leadership.

### C. National Physician Health Program Standards

24. National physician health programs ("PHPs") are designed to protect patient safety while enabling physicians with substance use disorders in sustained remission to safely return to clinical practice through individualized monitoring, objective testing, and professional oversight.

25. Consistent with nationally recognized PHP standards, physicians who demonstrate sustained sobriety, continuous compliance with monitoring requirements, and favorable independent clinical evaluations are routinely cleared to resume full clinical duties, including access to controlled substances when clinically indicated.

26. Plaintiff's treatment, monitoring, and clinical clearance conform to these nationally accepted PHP principles, which emphasize individualized assessment and current functional capacity, rather than categorical exclusions based on past diagnoses.

### D. No Current Impairment (ADA / DOJ-Tracking Allegations)

27. At all relevant times, Plaintiff did not have a current substance use disorder and was not presently engaging in the illegal use of drugs within the meaning of the ADA.

28. Plaintiff had no current impairment that substantially limited his ability to perform the essential functions of anesthesiology, as confirmed by multiple independent medical and psychiatric evaluations.

29. Defendants' actions were therefore not based on any present functional limitation, but instead on Plaintiff's history of substance use disorder, which the ADA expressly protects when an individual is in sustained remission.

### E. Discriminatory Licensing Action

30. Despite Plaintiff's qualifications and medical clearance, Defendants offered a consent order categorically prohibiting Plaintiff from accessing opioids.

31. Access to controlled substances is an essential function of anesthesiology and is required to provide safe care during routine and emergent clinical situations.

32. Plaintiff and Plaintiff's counsel repeatedly informed Defendants that the proposed restriction rendered anesthesiology practice impossible, made lawful employment unattainable, and created patient-safety risks in emergencies.

33. Defendants refused to modify or rescind the restriction.

34. In communications with Plaintiff's counsel, Defendants stated that they were unwilling to allow Plaintiff to practice anesthesiology, notwithstanding unanimous clinical clearance.

35. The restriction was not imposed due to any present impairment, relapse, misconduct, or individualized risk assessment, but solely because of Plaintiff's disability history.

36. Defendants' decision-making regarding restrictions on the practice of anesthesiology was undertaken by a Board that did not include a physician who is board certified or clinically trained in anesthesiology.

37. Defendants imposed categorical restrictions affecting the safe practice of anesthesiology without input from, or consultation with, any anesthesiologist capable of evaluating the clinical realities, emergency requirements, and medication-access needs inherent in that specialty.

### F. Comparator Evidence: Pennsylvania vs. New Jersey

38. Throughout the relevant period, Plaintiff maintained an active and unrestricted medical license in the Commonwealth of Pennsylvania.

39. Pennsylvania regulators reviewed the same or substantially similar evidence regarding Plaintiff's sobriety, monitoring compliance, and clinical fitness.

40. Pennsylvania imposed no restriction on Plaintiff's ability to practice anesthesiology or access controlled substances.

41. Defendants' substantially harsher treatment was unsupported by medical evidence and inconsistent with national regulatory norms.

42. This disparity demonstrates that Defendants failed to conduct an individualized assessment and instead imposed a categorical exclusion based on disability.

43. Notwithstanding Plaintiff's unrestricted Pennsylvania licensure, Defendants' New Jersey actions effectively foreclosed Plaintiff's ability to obtain or maintain anesthesiology employment in Pennsylvania, because hospitals, anesthesia groups, and credentialing bodies required disclosure of the New Jersey consent order and declined to credential or employ Plaintiff as a result.

44. Defendants' conduct therefore caused interstate professional exclusion and directly resulted in loss of anesthesiology employment opportunities in Pennsylvania, substantially increasing Plaintiff's economic damages.

### G. DOJ Enforcement Authority (Indiana State Board of Nursing)

45. The United States Department of Justice ("DOJ"), which enforces Title II of the ADA, has formally found that state professional licensing boards violate the ADA when they impose categorical exclusions on individuals with substance use disorder histories without individualized assessment.

46. In a March 25, 2022 Letter of Findings concerning the Indiana State Board of Nursing, the DOJ concluded that excluding a licensee from professional participation based on treatment for substance use disorder—rather than current ability—constituted discrimination by reason of disability.

47. The DOJ emphasized that Title II prohibits licensing authorities from relying on generalized assumptions, blanket rules, or stigma, and requires decisions to be grounded in current medical evidence and functional capacity.

48. That enforcement action resulted in a settlement requiring elimination of categorical prohibitions and restoration of access to professional practice for individuals who demonstrate medical stability and compliance with monitoring.

49. Defendants' conduct here mirrors the conduct the DOJ found unlawful, further demonstrating deliberate indifference to Plaintiff's ADA-protected rights.

### H. Notice to Defendants

50. At the time of the challenged conduct, Defendants were on actual or constructive notice of DOJ Title II enforcement guidance addressing substance use disorder and professional licensing.

51. Defendants nonetheless proceeded with exclusionary and categorical restrictions, despite knowing such conduct was substantially likely to violate federal law.

### I. Deliberate Indifference

52. Defendants had actual knowledge that their actions would exclude Plaintiff from anesthesiology practice and deny meaningful access to a public licensing program.

53. Defendants possessed and reviewed multiple clinical evaluations expressly stating that the proposed restriction was medically unwarranted.

54. Defendants nonetheless proceeded with exclusionary restrictions and communicated an unwillingness to allow Plaintiff to practice anesthesiology.

55. Defendants' conduct constitutes deliberate indifference, as they knew their actions were substantially likely to violate Plaintiff's ADA rights and consciously disregarded that risk.

### J. Statute of Limitations

56. This action is timely filed within the applicable statute of limitations for ADA Title II claims, as Defendants' discriminatory conduct occurred within the limitations period.

## COUNT I — VIOLATION OF TITLE II OF THE ADA

57. Plaintiff incorporates the foregoing paragraphs.

58. Plaintiff is a qualified individual with a disability.

59. Defendants are public entities and officials subject to Title II of the ADA.

60. Defendants denied Plaintiff meaningful access to a public licensing program by imposing eligibility criteria and restrictions that excluded Plaintiff by reason of disability.

61. Defendants failed to conduct an individualized assessment and instead imposed categorical exclusions prohibited by the ADA.

62. Defendants' conduct caused Plaintiff substantial economic loss, professional harm, and deprivation of federally protected rights.

## COUNT II — VIOLATION OF PROCEDURAL DUE PROCESS

63. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

64. Plaintiff possesses a constitutionally protected property interest in his medical license and in the continued ability to pursue his chosen profession of anesthesiology, which may not be deprived without due process of law.

65. Plaintiff also possesses a protected liberty interest in pursuing lawful employment in his profession free from arbitrary governmental exclusion and from stigma imposed without adequate procedural safeguards.

66. Defendants' actions effectively deprived Plaintiff of these interests by imposing restrictions that rendered anesthesiology practice impossible, notwithstanding Plaintiff's active licensure, qualifications, and clinical clearance.

67. Defendants deprived Plaintiff of his protected interests without constitutionally adequate procedural safeguards, including by failing to provide a meaningful opportunity to contest the factual basis for the categorical opioid restriction, refusing to engage in an individualized evidence-based assessment of Plaintiff's current fitness, disregarding unanimous independent clinical evaluations, and predetermining the outcome by expressing an unwillingness to allow Plaintiff to practice anesthesiology regardless of evidence.

68. The so-called consent process did not constitute meaningful process where Defendants made clear that refusal would result in continued exclusion from practice, and where the proposed consent order functioned as a coerced waiver of constitutional protections.

69. Defendants' conduct was arbitrary, capricious, and irrational and bore no reasonable relationship to Plaintiff's present ability to practice medicine safely.

70. Defendants Winstead and Shukla are responsible for enforcing the challenged practices and are sued in their official capacities for prospective declaratory and injunctive relief.

71. This claim seeks prospective relief to remedy ongoing and future constitutional violations and is cognizable under Ex parte Young.

72. As a direct and proximate result of Defendants' due-process violations, Plaintiff has suffered loss of employment opportunities, professional harm, reputational injury, and economic damages.

## SOVEREIGN IMMUNITY AND REMEDIES

73. Congress validly abrogated state sovereign immunity for claims under Title II of the ADA where, as here, the challenged conduct violates the Fourteenth Amendment.

74. In the alternative, Plaintiff seeks prospective declaratory and injunctive relief against Defendants Winstead and Shukla in their official capacities pursuant to Ex parte Young.

75. Plaintiff seeks compensatory damages only to the extent permitted by law, based on Defendants' intentional discrimination and deliberate indifference.

## PRAYER FOR RELIEF

76. WHEREFORE, Plaintiff respectfully requests that the Court: (A) Declare that Defendants' actions violate Title II of the ADA; (B) Enjoin Defendants from enforcing discriminatory restrictions and require individualized, evidence-based licensing determinations; (C) Order Defendants to issue Plaintiff a full and unrestricted New Jersey medical license permitting the practice of anesthesiology without categorical or disability-based restrictions; (D) Order Defendants to modify their policies, practices, and procedures for similarly affected applicants in the present and future to conform with federal and New Jersey disability-discrimination law, including Title II of the ADA and implementing regulations, by requiring individualized assessment and prohibiting categorical exclusions based on disability history; (E) Award compensatory damages in the amount of $1,900,000, representing four (4) years of lost median anesthesiology earnings, or such amount as proven at trial and permitted by law; (F) Award reasonable attorneys' fees and costs under 42 U.S.C. § 12205; (G) Award pre- and post-judgment interest; and (H) Grant such other relief as the Court deems just and proper.

## JURY DEMAND

77. Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,


Date: _____


_____

Frederick Thomas Allen, MD MBA

71. This claim seeks prospective relief to remedy ongoing and future constitutional violations and is cognizable under Ex parte Young.

72. As a direct and proximate result of Defendants' due-process violations, Plaintiff has suffered loss of employment opportunities, professional harm, reputational injury, and economic damages.

## SOVEREIGN IMMUNITY AND REMEDIES

73. Congress validly abrogated state sovereign immunity for claims under Title II of the ADA where, as here, the challenged conduct violates the Fourteenth Amendment.

74. In the alternative, Plaintiff seeks prospective declaratory and injunctive relief against Defendants Winstead and Shukla in their official capacities pursuant to Ex parte Young.

75. Plaintiff seeks compensatory damages only to the extent permitted by law, based on Defendants' intentional discrimination and deliberate indifference.

## PRAYER FOR RELIEF

76. WHEREFORE, Plaintiff respectfully requests that the Court: (A) Declare that Defendants' actions violate Title II of the ADA; (B) Enjoin Defendants from enforcing discriminatory restrictions and require individualized, evidence-based licensing determinations; (C) Order Defendants to issue Plaintiff a full and unrestricted New Jersey medical license permitting the practice of anesthesiology without categorical or disability-based restrictions; (D) Order Defendants to modify their policies, practices, and procedures for similarly affected applicants in the present and future to conform with federal and New Jersey disability-discrimination law, including Title II of the ADA and implementing regulations, by requiring individualized assessment and prohibiting categorical exclusions based on disability history; (E) Award compensatory damages in the amount of $1,900,000, representing four (4) years of lost median anesthesiology earnings, or such amount as proven at trial and permitted by law; (F) Award reasonable attorneys' fees and costs under 42 U.S.C. § 12205; (G) Award pre- and post-judgment interest; and (H) Grant such other relief as the Court deems just and proper.

## JURY DEMAND

77. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Date: 1/6/26

Frederick Thomas Allen, MD MBA