| | |
|---|---|
| Frederick Thomas Allen, M.D.<br><br>Plaintiff,<br><br>v.<br><br>New Jersey Board of Medical Examiners, ET AL.,<br>Defendants. | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>Hon. Michael A. Shipp, U.S.D.J.<br><br>Civil Action No. 3:26-CV-00090-MAL-RLS<br><br>Motion Date: 05/04/2026 |

---

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF FREDERICK ALLEN, M.D.'S COMPLAINT ON BEHALF OF DEFENDANTS NEW JERSEY BOARD OF MEDICAL EXAMINERS, ANTONIA WINSTEAD, AND J. NIMISHA SHUKLA, M.D.

---

Jennifer Davenport
ATTORNEY GENERAL OF NEW JERSEY
124 Halsey Street
Newark, New Jersey 07101
Attorney for Defendants,
New Jersey Board of Medical Examiners, Antonia Winstead, and J. Nimisha Shukla, M.D.

By: Daniel Roman
Deputy Attorney General
NJ Attorney ID 275882018

Table of Contents

Preliminary Statement....4

Statement of Facts and Procedural History .....6

Standard of Review ....7

Argument ....9

Conclusion....28

Table of Authorities

CASES

Acra Turf Club, LLC v. Zanzuccki, 748 F.3d 127, 1140 (3d Cir. 2014 .... 22
Alden v. Maine 527 U.S. 706 (1999) ....8
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)....7
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ....7
Bennett v. Atl. City, 288 F. Supp. 2d 675, 678 ....6, 23, 24
Bettencourt v. Bd. of Registration in Med 904 F.2d 772, 778 (1st Cir. 1990) .... 23
Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009) .... 15
City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.,908 F. 3d 872, 878-79 (3d Cir. 2018) ....7
Coll. Sav. Bank of Fla. v. Fla. Prepaid Postsecondary Educ. Expense Bd .... 10
Constantine v. New Jersey Dep't of Banking, 2023 U.S. Dist LEXIS 50768, *8, 2023 WL 2625007....9

Ex parte Young, 209 U.S. 123 (1908)....4
Fed. Mar. Comm'n v. S.C. State Ports Auth. et al, 535 U.S. 743, 766 (2002) ....9
Ford Motor Co., v. Dep't of Tr. of Indiana, 373 U.S. 57 (1984).... 14

Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009)....8
Getson v. New Jersey, 352 Fed. Appx. 749 (3d. Cir. 2009) .... 25
Gonzalez v. Waterfront Comm'n of the N.Y. Harbor, 755 F.3d 176, 180 (3d Cir. 2014) .... 21, 24
Gregory v. Administrative Office of the Courts of New Jersey, 168 F. Supp. 2d 319 (D.N.J. 2001) .... 14
Guttman v. Khalsa, 669 F. 3d 1101, 1113 (10th Cir. 2012).... 10

Hawaii v. Gordon, 373 U.S. 57, 58 (1963))....9
Hessein v. Union Cnty. Prosecutor's Office, 2014 U.S. App. LEXIS 11117, *5 (3d Cir. June 16, 2014 .... 22
In re Burlington Coat Factory Sec. Litig.,114, F.3d 1410 (1997)....7
In re License Issued to Zahl, 186 N.J. 341, 351 (2006 .... 17
In Re Polk, 90 N.J. 550, 565 (1982).... 17
In Re License Issued to Zahl, 186 N.J. 341, 351 (2006).... ....17

Longoria v. N.J.,168 F. SUpp. 2d 308 (D. N.J. 2001) ....9
Malleus v. George, 641 F. 3d 560 (3d Cir. 2009)....7
MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania, 271 F. 3d 491 (3d Cir. 2001) .... 10, 14
McTernan v. City of York, 577 F. 3d 521 (3d Cir. 2009) ....7
Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d 574 (D. N.J. 2002) .... 19
Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) .... 21, 23

Mutschler v. NJDEP, 337 N.J. Super, 1 (App. Div 2001), Certif Denid, 168 N.J. 292 (2001) .......... 24
New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI), 491 U.S. 350, 373 (1989).21, 22
O'Neill v. Philadelphia, 32 F. 3d 785 (3d Cir. 1994) .......... 24
Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627 (1986) .......... 23
Pascucci v. Vagott, 71 N.J. 40 (1976) .......... 24
Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) .......... 9, 10, 14
Pension Benefit Guar. Corp. v. White Consol. Indus., Inc, 998 F. 2d 1192 (3d Cir. 1993) .......... 7
Quern v. Jordan, 440 U.S. 332 (1979) .......... 10
Salley v. Circuit City Stores, 160 F.3d 977 (3d Cir 1998 .......... 19
Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 58 (1996 .......... 9
Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013) .......... 21

Waterfront Comm'n of the N.Y. Harbor, 755 F.3d 176, 180 (3d Cir. 2014) .......... 21

Younger v. Harris, 401 U.S. 37 (1971) .......... 4, 21
Zahl v. N.J. Dep't of Law & Pub. Safety, 2008 U.S. Dist Lexis 24022 (D. N.J. 2008) .......... 9,23, 25

## PRELIMINARY STATEMENT

Defendants, the New Jersey State Board of Medical Examiners (the "Board"), Board Chair J. Nimish Shukla, M.D., and Antonia Winstead, Executive Director for the Board (hereafter the "Individual Board Defendants"), submit this Supplemental Brief to buttress arguments previously advanced in support of Defendants' Motion to Dismiss filed April 1, 2026, respond to arguments Plaintiff raises in his April 2, 2026 Opposition to the Motion to Dismiss, and to amplify additional legal bases upon which Plaintiff's Complaint should be dismissed.

Plaintiff, Frederick Thomas Allen, M.D., improperly brings this Federal action against the Board and Individual Board Defendants in an effort to have this Court compel the Board to unconditionally reinstate his license to practice medicine in New Jersey. Dr. Allen alleges the Board is violating his rights under the Americans with Disabilities Act (ADA") and the United States Constitution by intentionally discriminating against him based on a disability, depriving him of his license to practice medicine. Dr. Allen asks this Court to effectively intervene in state disciplinary proceedings that are within the jurisdiction of the New Jersey judicial system, and his attempt to invoke federal court jurisdiction for this purpose is inappropriate and a waste of federal judicial resources.

The Board's actions complained of in his Complaint arise out Dr. Allen's decision in January 2022 to practice medicine while he was impaired. As he was administering anesthesia to a patient during a surgical procedure, Dr. Allen lost consciousness and ultimately required resuscitation by naloxone administered by emergency personnel. See Exhibit A, New Jersey Healthcare Profile. Dr. Allen thereafter voluntarily surrendered his medical license pending demonstration of his fitness to practice medicine and further order

of the Board. Dr. Allen's Complaint severely masks the historical record of this action, particularly the multiple times the full Board or a Committee thereof considered his requests for an unconditional reinstatement of his medical license. Dr. Allen has refused all offers by the Board to reinstate his license subject to conditions and limitations the Board has determined would protect the public health, safety and welfare, and he remains prohibited from practicing medicine in New Jersey.

Dr. Allen seeks prospective declaratory, injunctive and compensatory relief against the Board and Individual Board Defendants, as well as an order that the Board fully reinstate his medical license and award him compensatory damages. As argued herein, all claims in Plaintiff's complaint, including his allegation the Board is violating the ADA by refusing to unconditionally reinstate his medical license, should be dismissed with prejudice pursuant to abstention principles established by Younger v. Harris, 401 U.S. 37 (1971), and its progeny, and for failure to state a claim upon which relief can be granted. Moreover, because there is no ongoing violation of federal law, the doctrine of Ex parte Young, 209 U.S. 123 (1908), is inapplicable.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendants rely upon the Statement of Facts and Procedural History in Defendant's initial brief; however, a short recitation of salient facts and history appear below for ease of reference herein.

On January 11, 2022, while administering anesthesia to a patient during a spinal surgery procedure, Dr. Allen lost consciousness and required resuscitation by CPR and naloxone administered by emergency personnel. See Exhibit A. During the Board's investigation of his conduct prior to and during the incident, Dr. Allen voluntarily surrendered his New Jersey medical license. The surrender order to which Dr. Allen consented expressly stated the surrender would endure until further order of the Board, and reserved the Board's right to impose restrictions on Dr. Allen's license should it be reinstated. The order further required that Dr. Allen enroll in and comply with all requirements of the Professional Assistance Program of New Jersey ("PAP"), a private evaluation and treatment monitoring program that assists healthcare licensees recover from impairing medical conditions.

Within six months of surrendering his license, Dr. Allen appeared before a Committee of the Board – on October 5, 2022 – seeking reinstatement of his license to resume the practice of anesthesiology. The Committee remained concerned for patient safety should Dr. Allen resume practice so quickly following the January 2022 event, and deemed his request premature at that time. The Board thereafter authorized Dr. Allen's reinstatement with certain conditions, including full compliance with the PAP, practicing only as an employee, and only under the oversight of an observer. Dr. Allen requested removal of the observer requirement, stating it would preclude him from obtaining employment. A committee of the Board considered this request in July 2023, and the full Board denied the request at its August 2023 meeting. In September 2023, a committee of the Board re-reviewed Dr. Allen's request and

recommended he appear before the Board to demonstrate his fitness to resume practice, and for further consideration of the observer requirement.

Dr. Allen appeared with counsel before a Committee of the Board on December 6, 2023 to give testimony in support of his reinstatement. The Board agreed to remove the observer requirement from the proposed reinstatement conditions, but added a provision in which Dr. Allen would not be allowed to handle CDS while practicing. This proposal was also rejected by Dr. Allen. On December 18, 2025, Dr. Allen appeared before a Committee of the Board a third time, after which similar reinstatement terms were again offered and rejected.

Dr. Allen initiated this action on January 7, 2026, suing the New Jersey Board of Medical Examiners, Board Executive Director Antonia Winstead and Board Member J. Nimisha Shukla, M.D. in their official capacities. In three letters submitted to Board counsel on March 9, 2006, Dr. Allen requested 1) that the Board transfer this matter to the Office of Administrative Law as a contested case; 2) a hearing before the full Board on his reinstatement application; and 3) that the full Board reconsider its prior reinstatement conditions. On March 16, 2026, Dr. Allen filed an appeal in the Appellate Division of the Superior Court of New Jersey challenging the Board's refusal to grant him an unconditional license to practice medicine. On April 7, 2026, Dr. Allen notified this Court he had withdrawn the appeal in the New Jersey Appellate Division. See ECF 17.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) permits courts to dismiss a complaint for lack of jurisdiction (Rule 12(b)(6)(1)) or for failure to state a claim upon which relief can be granted (Rule 12(b)(6)). Review of a motion to dismiss pursuant to Rule 12(b)(1) is similar to review of a 12(b)(6) motion and requires the Court to view the complaint in the light most favorable to Plaintiffs. Bennett v. Atl. City, 288 F. Supp. 2d 675, 678 (D.N.J. 2003)(citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A pleading that simply offers " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id. A district court must disregard all "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018). At this stage, the court may consider the complaint, exhibits attached to the complaint, matters of public record, and prior judicial opinions. McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Ibid.

Under the Iqbal and Twombly pleading framework, a district court must undertake a three-prong analysis. See Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2009). First, the court should "tak[e] note of the elements a plaintiff must plead to state a claim." Id. Next, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Finally, when a plaintiff's complaint contains "well-pleaded factual allegations," the allegations should be presumed veracious, and the court should ascertain whether they "plausibly give rise to an entitlement for relief." Malleus, 641 F.3d at 563; see also City of Cambridge, 908 F.3d at 878 (finding that a district court must accept "all well-

pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." This finding requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

## ARGUMENT

## POINT I

### PLAINTIFF'S CLAIMS AGAINST THE BOARD AND INDIVIDUAL BOARD DEFENDANTS ARE BARRED BY THE ELEVENTH AMENDMENT.

Defendants are immune from suit under the doctrine of sovereign immunity. The Eleventh Amendment to the United States Constitution explicitly references States' immunity from suits:

> [T]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State.
> [U.S. Const. amend. XI.]

Sovereign immunity of the States is not, however

> limited by the terms of the Eleventh Amendment. Rather, as the Constitution's structure, and its history, and the authoritative interpretations by [the Supreme Court] make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today. . .except as altered by the plan of the Convention or certain constitutional Amendments.

[Alden v. Maine, 527 U.S. 706, 712-13.]

Sovereign immunity is not merely a defense to liability; it is a complete immunity from suit. Fed. Mar. Comm'n v. S.C. State Ports Auth. et al., 535 U.S. 743, 766 (2002). The

preeminent purpose of this doctrine is "to accord States the dignity that is consistent with their status as sovereign entities." Id. at 760. This immunity stands for the principle that States should not even be brought into federal court to answer a Complaint by a private person. Ibid.

Defendant, the New Jersey Board of Medical Examiners, is a sub-unit of the New Jersey Department of Law and Public Safety, Division of Consumer Affairs. The Department of Law and Public Safety, which is headed by the Attorney General, is an arm of the State and is entitled to assert the State's sovereign immunity. See N.J. Stat. Ann. 52:17B-1; See also Longoria v. N.J., 168 F. Supp. 2d 308, 315-16 (D.N.J. 2001). As a sub-unit of the State, the Board is also protected by sovereign immunity. N.J.S.A. 52:17B-5.6, 17B-29; Zahl v. N.J. Dep't of Law & Pub. Safety, 2008 U.S. Dist. LEXIS 24022, *61 (D.N.J. March 26, 2008).

Regardless of whether the suit seeks monetary damages or injunctive relief, a suit against a State or its officials is barred in federal court if the decree would operate against the sovereign. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (citing Hawaii v. Gordon, 373 U.S. 57, 58 (1963)). The type of relief sought by a private citizen is "irrelevant to the question [of] whether the suit is barred by the Eleventh Amendment." Fed. Mar. Comm'n, supra, 535 U.S. at 765 (quoting Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 58 (1996). Noting the general rule, the Supreme Court in Pennhurst reaffirmed its previous determination that a suit is against the State if the judgment would be paid out of the State treasury or would interfere with government administration. Pennhurst, supra, 465 U.S. at 101 n. 11 (citation omitted). Likewise, if the judgment operates to compel the State to act or restrain it from acting, the suit is against the sovereign. Ibid.

**A. Exceptions to Sovereign Immunity**

There are three limited exceptions to state sovereign immunity, none of which apply to Plaintiff's claims: (1) congressional abrogation, (2) state waiver, and (3) suits against individual state officers for prospective relief to end an ongoing violation of federal law. MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania, 271 F. 3d 491, 503 (3d Cir. 2001).

Regarding the first exception, Congress may abrogate a State's sovereign immunity so as to vindicate rights protected under the Fourteenth Amendment. Coll. Sav. Bank of Fla. v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). However, the abrogation must be "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" Pennhurst, supra, 465 U.S. at 99 (quoting Quern v. Jordan, 440 U.S. 332, 342 (1979)).

Title II of the Americans with Disabilities Act abrogates States' rights to sovereign immunity under the Eleventh Amendment. See 42 U.S.C. 12202. That abrogation is only valid, however, to the extent the state's conduct *actually* violates the Fourteenth Amendment. Constantine v. New Jersey Dep't of Banking, 2023 U.S. Dist. LEXIS 50768, *8, 2023 WL 2625007, citing U.S. V. Georgia, 546 U.S. 151, 159 (citations omitted). Within the context of professional licensing decisions by state agencies, the Court in Constantine agreed with the Tenth Circuit and other federal courts in concluding that Title II of the ADA does not validly abrogate a State's sovereign immunity. Constantine, *11.

In Constantine, the plaintiff argued that the New Jersey Real Estate Commission deprived him of a real estate license on the basis of his mental disability, in violation of Title II. The Court, acknowledging that this issue had yet to be addressed by the Third Circuit, concurred with the Tenth Circuit's "persuasive and thorough analysis of the issue in Guttman," referring to Guttman v. Khalsa, where the plaintiff was a physician whose medical license had been revoked by the New Mexico Board of Medical Examiners based on a disability. 669 F.3d

1101, 1113 (10th Cir. 2012)(emphasis in original). Constantine, at *11. The Constantine Court then applied the three-step inquiry outlined by the Supreme Court in Georgia for analyzing Constantine's ADA discrimination claims: 1) determine which aspects of the State's alleged conduct violated Title II; 2) evaluate the extent to which such misconduct also violates the Fourteenth Amendment; and 3) insofar as such misconduct violated Title II of the ADA but not the Fourteenth Amendment, determine whether Congress's purported abrogation of sovereign immunity as to that class of conduct is valid. Constantine, at *9, citing Georgia, 546 U.S. 151, at 154.

The physician-plaintiff in Guttman alleged both procedural and equal protection violations, alleging the Board violated his due process rights by not providing him a hearing before suspending his medical license. Guttman, at 1113-14. The Tenth Circuit in Guttman concluded that no Fourteenth Amendment violation had occurred, because in matters of public health and safety, the due process afforded to one who has a protected property interest – such as a license to practice a chosen profession – is sufficient so long as the deprivation is supported by the important government interest of protecting the public, there is a rational basis to treat the plaintiff differently, and sufficient post-deprivation process is provided. Id. at 1113-16. Following Guttman, the Court in Constantine determined no Fourteenth Amendment violation occurred, as the Real Estate Commission "like the medical board in Guttman" has the authority to oversee the licensing process for realtors and can determine whether they believe applicants pose an imminent danger to public safety. Constantine, *12-13.

Similarly, to the extent Dr. Allen's Complaint alleges the Board violated his due process and equal protection rights, such claims do not substantiate a Fourteenth Amendment violation. Dr. Allen has not been deprived of a medical license because of his disability. In

March 2022 he surrendered his license via Consent Order pursuant to which he agreed that he would need to demonstrate fitness to resume practice prior to any reinstatement, and that the Board, a body comprised mostly of physicians, could impose conditions upon such reinstatement. Dr. Allen has in fact come before the Board and made a presentation sufficient to allow the Board to conclude that he could be fit to resume practice in New Jersey, but if and only if certain conditions are imposed which the Board deems appropriate and essential to protect the public from harm should Dr. Allen again act in a manner that would potentially compromise patient health and safety.[1] Dr. Allen acted in a grossly negligent manner in January 2022, and his decisions and actions presented grave risks to the health of the anesthetized patient. The restrictions and limitations which the Board currently seeks to impose upon reinstatement of Dr. Allen's license trace directly back to his conduct. The Board has three times offered Dr. Allen the opportunity to reinstate his subject to those conditions and has, on each and every occasion, done so in a manner that allows for Dr. Allen's return to practice. Dr. Allen would have this Court conclude the Board is fully precluded, at this time, from doing anything less than unconditionally reinstating his license because he now fits within the statutory definition of an individual with a disability under the ADA. Were the Court to do so, the Board's abilty to administer its licensing program in a manner designed to protect

[1] Consistent with the express language of Paragraph 12 of the March 2022 Consent Order, the Board could have elected (and still arguably could) to unilaterally enter an Order reinstating Dr. Allen's license and imposing the same conditions and restrictions on that reinstatement which have been proposed in the Consent Orders which have been offered for Dr. Allen's consideration. The Board traditionally, however, has sought to ensure that licensee's sign off on conditional reinstatement orders by using a Consent Order model, as it requires the licensee to acknowledge his or her awareness of the conditions that are being imposed and their awareness that failure to comply with those conditions will be a basis upon which the Board can thereafter immediately suspend their license.

the health, safety and welfare of the people of New Jersey would necessarily be compromised, if not eviscerated entirely.

New Jersey law fully authorizes the Board to take disciplinary action against Dr. Allen based on his January 2022 conduct. N.J.S.A. 45:1-21 provides that a board may suspend or revoke a license based on any of multiple grounds, to include without limitation engaging in gross negligence which endangers the life, health, safety or welfare of any person; engaging in repeated acts of negligence, and engaging in professional misconduct, etc. N.J.S.A. 45:1-22(h) specifically provides that, in addition or as an alternative to suspending or revoking a license, the board may order any person, as a condition for reinstatement of license, to submit to any supervision, monitoring or limitation on practice determined by the Board to be necessary. Should Dr. Allen seek review of the Board's denial to reinstate his medical license unconditionally, he maintains an opportunity to contest the Board's decision through the OAL hearing process and ultimately appeal a final decision.

As in Constantine, there is no violation of the Fourteenth Amendment here. Dr. Allen's right to practice his chosen profession is not fundamental, and abrogation of sovereign immunity would inhibit the State's ability to make professional licensing decisions. Constantine, at *13, quoting Guttman. Therefore, Title II of the ADA does not validly abrogate sovereign immunity in the realm of professional licensing, the Board is immune from Dr. Allen's Title II ADA claims, and this Court lacks subject matter jurisdiction.

Regarding the second sovereign immunity exception, state waiver, the State of New Jersey has not waived its sovereign immunity with regard to suits brought in federal court against the State, its subdivisions, agencies and officials, nor has waiver been inferred by its conduct. Gregory v. Administrative Office of the Courts of New Jersey, 168 F. Supp. 2d 319

(D.N.J. 2001); N.J. Stat. Ann. §59:2-5 (immunity is reserved under New Jersey Tort Claims Act by public entities and employees for license revocation); MCI Telecomm Corp, at 503.

The third limited exception to Eleventh Amendment immunity is litigation against individual state officials for prospective relief to remedy an ongoing violation of federal law. See Ex parte Young, 209 U.S. 123 (1908). The theory behind Young is that an action to stop a state official from enforcing an unconstitutional state law is an action against the individual charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer becomes subject to the consequences of his individual conduct. MCI Telecom., 271 F.3d 491, 506. This doctrine is not applicable however, if the state is the real, substantial party in interest and the suit is in fact against the state despite nominally naming individual officers. MCI, at 506, citing Pennhurst State Sch. And Hosp. v. Halderman, 465 U.S. 89, 103 (1984); Ford Motor Co., v. Dep't of Tr. Of Indiana, 323 U.S. 459, 464 (1945). If a ruling would operate against the state, the state is the real party in interest and the Eleventh Amendment bars the suit. Pennhurst, at 101, citing Hawaii v. Gordon, 373 U.S. 57, 58 (1963). When the State itself is named as a defendant, a suit against state officials in their official capacity is no different from a suit against the State itself and is barred regardless of whether it seeks damages or injunctive relief. Pennhurst, supra, 465 U.S. at 101-02.

Here, Dr. Allen seeks declaratory, injunctive and prospective relief against both the Board and the Individual Board Defendants in their official capacities. For the reasons enumerated above, the doctrine of sovereign immunity embodied by the Eleventh Amendment bars all Plaintiff's claims against the Board and the Individual Board Defendants. Plaintiff's Complaint should therefore be dismissed with prejudice.

## POINT II

**PLAINTIFF'S CLAIMS THAT DEFENDANTS VIOLATED THE AMERICANS WITH DISABILITIES ACT MUST FAIL BECAUSE HE CANNOT ESTABLISH THE NECESSARY ELEMENTS TO SUSTAIN THIS CLAIM.**

Title II of the Americans with Disabilities Act ("ADA") prohibits public entities, as defined under 42 U.S.C. 12131 to include state and local governments and their instrumentalities, from administering licensing programs in a manner that discriminates against qualified individuals with disabilities. Specifically, 42 U.S.C. § 12132 states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Additionally, implementing regulations under 28 C.F.R. § 35.130(b)(6) prohibit public entities from administering licensing or certification programs in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability.

In order to succeed in an ADA claim, a plaintiff must demonstrate that: (1) they have a disability as defined under the statute; (2) that they were otherwise qualified to hold a license; and (3) that by reason of such disability, they were excluded from retaining their license. See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009).

Defendants do not dispute that substance abuse disorder is a disability under the ADA. Nor do Defendants dispute that ADA protections apply to individuals, like Dr. Allen, who have had substance use disorders but are not currently using illegal drugs, and who have either successfully completed a supervised drug rehabilitation program or who are currently participating in a supervised rehabilitation program. See 42 USCA 12114. However, the

protections afforded by the ADA do not apply when an individual in engaging in illegal drug use. Pursuant to 42 USCS 12114(a), "[f]or purposes of this title, a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."

Dr. Allen is not entitled to any protection under the ADA from actions proposed to be taken by the Board of Medical Examiners that are directly, and inextricably, linked to misconduct that he engaged in in 2021 and 2022, when he was engaged in illegal drug use while practicing medicine. Dr. Allen's claim that the Board is now precluded from doing anything other than reinstating his license unconditionally, because he is now a protected person with a disability under the ADA, is predicated on his fundamental mischaracterization and misunderstanding of the reasons why the Board seeks to condition and limit any reinstatement of his license. Simply put, the conditions and limitations in all three proposed Consent Orders offered to Dr. Allen by the Board[2] have been deemed to be appropriate and necessary measures by the Board to ensure that the public health, safety and welfare will be fully protected if and when Dr. Allen's license is reinstated. The proposed conditions are not punitive measures designed to punish Dr. Allen for having had a prior psychoactive substance use disorder. Rather, they are measures that the Board, in its discretion, has deemed necessary to safeguard and protect the public from potential harm caused by a licensee who had previously surrendered his license after practicing while impaired, and whose practice at that time had necessarily presented grave risks to his patient not because of Plaintiff's

[2] The Board offered reinstatement conditions to Dr. Allen in 2023, 2024 and again in 2026, in each instance after Dr. Allen was first afforded an opportunity to be heard by appearing before a Preliminary Evaluation Committee of the Board.

disability.[3] Simply put, the Board has done nothing more in Dr. Allen's case than zealously seek to protect patients in New Jersey. The New Jersey Supreme Court has recognized that "[t]he Board's supervision of the medical field is critical to the State's fulfillment of its 'paramount obligation to protect the general health of the public" In re License Issued to Zahl, 186 N.J. 341, 351 (2006) (citing to In Re Polk, 90 N.J. 550, 565 (1982). This Court should conclude that the ADA in no way compromises or dilutes the Board's ability to fulfill its duty to protect the public from harm and to mitigate risk by ensuring that safeguards are in place to ensure that doctors who have previously placed patients in harms' way will not do so upon reinstatement of a previously suspended license.

There is no reasonable dispute that the Board is authorized by New Jersey law to impose the restrictions that have been included in each of the Consent Orders of license

[3] It should be noted that the Board has created a pathway allowing licensees with impairments, to include substance use disorders, to be afforded a non-disciplinary pathway to obtain treatment. Specifically, the Board established the Alternate Resolution Program ("ARP") for physicians with substance use impairments, which allows those physicians to obtain treatment and be followed confidentially by the Professional Assistance Program, with reporting to a Committee of the Board (the Impairment Review Committee) that is specifically tasked with conducting confidential review of those licensees' progress in treatment. See N.J.A.C. 13:35-11 et seq. Physicians who are accepted into the ARP are afforded full confidentiality for the duration of their treatment, as their cases are considered to be matters under investigation and confidential. See NJ.A.C. 13:35-11.4(a)(14). Upon successful completion of an individualized treatment program, the IRC advises the Board that the matter is to be closed with a finding of no basis for action. See N.J.A.C. 13:35-11.4(a)(15).

Dr. Allen was never, however, eligible to be followed by the IRC, because his conduct disqualified him from being a candidate for confidential review and treatment, both because he "rendered or attempted to render or was expected to render care at a time when impaired" and because "patients were harmed either directly or indirectly by the licensee's conduct." See N.J.A.C. 13:35-11.4(a)(5)(ii) and (a)5)(iii). Instead, Dr. Allen's case was pursued in a public manner, resulting initially in the filing and entry of the March 2022 Order which allowed Dr. Allen to voluntarily surrender his medical license.

reinstatement which have been offered to Dr. Allen. N.J.S.A. 45:1-22(h) explicitly authorizes the Board to impose supervision and/or monitoring requirements at the time of reinstatement. Indeed, the Board could have chosen to seek to formally revoke or suspend Dr. Allen's license based on the underlying conduct he engaged in, as New Jersey law explicitly provides for such actions to be taken when a licensed physician engages in acts of gross negligence, repeated acts of negligence, and/or acts of professional misconduct. See N.J.S.A. 45:1-21. The Board has not sought to do that in Dr. Allen's case, however, and instead has offered him a pathway for reinstatement that does not include any additional disciplinary action(s) or penalty(ies). That decision should be recognized to be one that is entirely within the Board's discretion.

The authority to impose restrictions or limitations upon any reinstatement of Dr. Allen's license is, however, not just clearly supported by law, but it was also a negotiated and agreed upon term of the March 2022 Consent Order which Dr. Allen entered with the Board. Paragraph 12 of that Order explicitly states that "in the event that Respondent seeks reinstatement of his license at any time in the future, the Board reserves the right to place restrictions and/or conditions upon Respondent's license to practice medicine and surgery in the State of New Jersey." It was clear, or certainly should have been clear to Dr. Allen, that there could be no reinstatement of license until Dr. Allen stopped using illegal drugs and secured treatment for his psychoactive substance use disorder. Alternatively stated, the Consent Order itself establishes that Dr. Allen's license could not have been reinstated at any time before he became eligible to be considered a person meeting the statutory definition of a person with a disability under the ADA entitled to the general protections afforded by the ADA, and it establishes that both Dr. Allen and the Board understood that, notwithstanding

that status, Dr. Allen could be required to comply with all conditions and restrictions the Board deemed necessary upon reinstatement.

Significantly, the principle that restrictions and limitations can be imposed on a person who is a qualified person with a disability, but one with a past history of psychoactive substance use disorder, has been directly recognized by this Court. In Med. Soc'y of N.J. v. Herr, this court dismissed an ADA claim by a doctor who was alleging discrimination based on his prior substance abuse. 191 F. Supp. 2d 574, (D. N.J. 2002) The Court reasoned that:

> ". . .it is entirely logical that past drug use by an individual suggests an increased risk of use in the future. Therefore, it rationally "'might be thought'" that subjecting an applicant for a medical license who has abused drugs in the past to scrutiny different than that applied to those who have committed transgressions not involving chemical dependency advances the State's interest in protecting the public from the obvious dangers posed by intoxicated physicians. Sammon, 66 F.3d at 645 (quoting Rogin v. Bensalem Twp., 616 F.2d 680, 689 (3d Cir. 1980)); Copeland v. Philadelphia Police Dept., 840 F.2d 1139, 1147-48 (3d Cir. 1988) (rejecting equal protection challenge to city's disciplinary policy that treated police officers who used drugs more harshly than those who committed other offenses).
>
> Id. At 584.

Case law also firmly establishes that the ADA was not intended to protect individuals from consequences of drug related misconduct. See Salley v. Circuit City Stores, 160 F.3d 977 (3d Cir 1998). In Salley, the Third Circuit upheld the dismissal of an ADA claim by an individual who sued his employer alleging discrimination due to his substance abuse. Ibid. The Defendants countered by arguing that he was fired for missing work and appearing at work under the influence of drugs. Ibid. The court cited 42 USCS 12114 in its reasoning stating, ". . .an employer may hold an alcoholic or drug-dependent employee to the same qualification standards for employment or job performance and behavior that such entity

holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee. Id. at 981. Though Dr. Allen is not an employee of the Board, the Court's analysis of the ADA applies here. Just as an employer may fire an individual with a substance abuse disorder if their misconduct independent of the drug use constitutes grounds for dismissal, the Board can condition or restrict any reinstatement of Dr. Allen's licensure based on the misconduct he engaged in at the time that he was impaired.

Defendants submit that Dr. Allen has not been excluded from retaining his license due to his disability. Dr. Allen voluntarily surrendered his license in March of 2022 via Consent Order. Pursuant to that order, he agreed that he would need to demonstrate fitness to resume practice prior to any reinstatement. Dr. Allen has in fact come before the Board and made a presentation sufficient to allow the Board to conclude that he could be fit to resume practice in New Jersey, but if and only if certain conditions are placed on any reinstatement which the Board deems appropriate and essential to protect the public health and safety. The Board has now three times offered Dr. Allen the opportunity to have his license reinstated subject to those conditions and has, on each and every occasion, done so in a manner that allows for Dr. Allen's return to practice without any additional disciplinary sanctions (although the Board could have chosen, and was clearly authorized by law, to seek more aggressive sanctions against Dr. Allen based on his misconduct).

Dr. Allen would have this Court conclude that the Board is fully precluded, at this time, from doing anything less than unconditionally reinstating his license because he can now fit within the statutory definition of an individual with a disability under the ADA. Were the Court to do so, it would necessarily weaken, if not eviscerate, the Board's obligation to administer its licensing program in a manner designed to protect the health, safety and welfare of the people of New Jersey. This Court should not suspend logic in the manner that Dr. Allen asks

it to do so, and instead should recognize, even at this stage of the proceedings, that the ADA clearly does not provide any basis to award Dr. Allen any of the relief he seeks, to include, without limitation, his suggestion that this Court affirmatively mandate the New Jersey State Board of Medical Examiners to issue an immediate and unconditional reinstatement of his license to practice medicine and surgery in New Jersey.

## POINT III

### PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO YOUNGER ABSTENTION PRINCIPLES.

Federal district courts should abstain from exerting jurisdiction over certain claims, based on the principles of comity and deference to state governmental functions. Younger v. Harris, 401 U.S. 37 (1971). The doctrine advances the strong federal policy against federal court interference in pending state proceedings absent extraordinary circumstances. Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). Abstention is appropriate when 1) there is a pending judicial proceeding; 2) the proceeding implicates important state interests; and 3) the state proceeding affords an adequate opportunity to raise constitutional challenges. Id., at 432.

In Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013), the Supreme Court clarified that Younger abstention is "not the presumptive course but rather an exception to the general rule that federal courts must hear and decide cases within their jurisdiction." Gonzalez v. Waterfront Comm'n of the N.Y. Harbor, 755 F.3d 176, 180 (3d Cir. 2014) (citing Sprint, 134 S. Ct. at 588). Under Sprint, abstention is appropriate in only three narrow categories of cases: (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. Sprint Commc'ns., Inc. v. Jacobs, supra, at 591 (quoting New Orleans

Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI), 491 U.S. 350, 373 (1989). The Sprint Court has made it clear that, in accord with NOPSI, these three categories "define Younger's scope." Ibid.

Administrative proceedings before the New Jersey State Board of Medical Examiners fall into the second category of cases for which abstention is appropriate under Sprint - civil enforcement proceedings. See Hessein v. Union Cnty. Prosecutor's Office, 2014 U.S. App. LEXIS 11117, *5 (3d Cir. June 16, 2014). In Hessein, the Court of Appeals agreed with the District Court that "the State has a strong interest in regulating and policing the practice of medicine within New Jersey." Hessein v. Union Cnty. Prosecutor's Office, 2013 U.S. Dist. LEXIS 167628, *16. Civil enforcement proceedings which are (1) "characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act," (2) where "a state actor is routinely a party to the state proceeding and often initiates the action," and (3) where the action is often preceded by internal investigations "often culminating in the filing of a formal complaint or charges," sufficiently resemble other state enforcement actions the Supreme Court has found appropriate for Younger abstention. Sprint, supra, at 592 (citations omitted). However, the application of Younger is not limited to cases where a state actor files a complaint or formal charges. Acra Turf Club, LLC v. Zanzuccki, 748 F.3d 127, 1140 (3d Cir. 2014).

Here, the Board commenced an investigation upon receiving a complaint regarding Dr. Allen's professional conduct. As the investigation continued, the Board offered Dr. Allen an opportunity to voluntarily surrender his medical license in lieu of the Attorney General commencing formal disciplinary proceedings to immediately suspend the license through enforcement of N.J.S.A. 45:1-21(e). The matter remains pending today before the Board, notwithstanding the fact that Plaintiff has appeared three times before Committees of the

Board and been offered opportunities to reinstate his license subject to certain conditions and limitations. Under Sprint, the pending proceeding before the Board constitutes an ongoing "civil enforcement proceeding" which is an "extraordinary circumstance" to which the doctrine of Younger abstention is applicable.

Once it is determined that an "extraordinary circumstance" exists, to determine if the Younger doctrine applies in a given matter, three elements must be satisfied: (1) there must be a pending state judicial proceeding, (2) the proceeding must implicate important state interests, and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges. Middlesex, 457 U.S. at 432.

Regarding the first element, "[s]tate administrative proceedings. . . have long been recognized as judicial in nature. Zahl v. Harper, 282 F.3d 204, 209 (3rd Cir. 2002) (citing to Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627 (1986) (state civil rights commission proceeding judicial in nature); Middlesex, 457 U.S. at 433-34 (bar disciplinary proceeding judicial in nature).

Regarding the second element, the Third Circuit has established that licensing matters before the New Jersey Board of Medical Examiners would implicate important state interests. Zahl, 282 F.3d at 209. Further, the court in Zahl noted that "[o]ther circuits, too, have recognized the obvious interest states have in regulating the practice of medicine." See, e.g., Doe v. Conn., Dep't of Health Servs., 75 F.3d 81, 85 (2d Cir. 1996) (ruling state "legislative scheme for disciplining doctors serves important and obvious public health objectives"); Bettencourt v. Bd. of Registration in Med., 904 F.2d 772, 778 (1st Cir. 1990) (ruling that enforcing proper standards of medical licensing "obviously implicates important state interests").

Regarding the third element, ". . . the third part of the Middlesex test 'is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination'" Zahl, 282 F.3d at 210 (citing to O'Neill v. Philadelphia, 32 F.3d 785, 792 (3d Cir. 1994)).[4] In Zahl, the Third Circuit concluded that the New Jersey Appellate Court provides an adequate opportunity to raise constitutional challenges arising from an administrative determination. Ibid. On March 16, 2026 -- subsequent to filing this Complaint – Dr. Allen filed a Notice of Appeal in the New Jersey Superior Court, Appellate Division. Dr. Allen's claims pursuant to the notice of appeal to the Appellate Division include a violation of procedural due process and ". . . the standard governing reinstatement after recovery from substance use disorder." Id.

Plaintiff clearly can raise the same claims he makes here – i.e., claims of intentional discrimination in violation of his rights under the Americans with Disabilities Act, and his claims of deprivations of procedural due process -- in the ongoing State Court proceedings, thereby satisfying the third prong of the Middlesex test. Additionally, the Third Circuit has concluded that abstention is appropriate in instances where a plaintiff has made a claim pursuant to the ADA. Gonzalez v. Waterfront Comm'n of the N.Y. Harbor, 755 F.3d 176 (3rd Cir. 2014). In Gonzalez, the Plaintiff sued his employer, the Waterfront Commission of the New York Harbor, for wrongful termination claiming the Commission discriminated against him pursuant to the ADA. In analyzing the third prong in Middlesex, the Court concluded Plaintiff '. . . is permitted to - and indeed has - raised his federal claims in his appeal to the New Jersey Superior Court, Appellate Division." Id. at 184.

[4] Pursuant to New Jersey Court Rule 2:2-3(a)(2), the Appellate Division is vested with "exclusive jurisdiction to review any action or inaction of any state administrative agency." Mutschler v. NJDEP, 337 N.J. Super 1, 9 (App. Div. 2001), certif. denied, 168 N.J. 292 (2001) (citing Pascucci v. Vagott, 71 N.J. 40, 51-54 (1976)).

In Getson v. New Jersey, 352 Fed. Appx. 749 (3d Cir. 2009), the Third Circuit found Younger abstention to be appropriate in a strikingly similar case to that now before the Court. In Getson, a doctor sued the New Jersey Board of Medical Examiners alleging a violation of his due process rights after the Board filed a complaint against him alleging professional misconduct. The Court, following the precedent of Zahl, determined that Younger abstention was appropriate as each of the Middlesex factors were present: (1) the Board's disciplinary proceeding was "clearly judicial in nature," (2) "New Jersey has a heavy and traditional interest in regulating the practice of medicine," and (3) the Plaintiff was able to raise his constitutional claims in the course of the state administrative proceeding and before the Appellate Division. Id. at 753.

In this case, the Court should dismiss Plaintiff's complaint pursuant to the Younger doctrine to allow all proceedings that remain pending before the Board of Medical Examiners to fully conclude, and/or to allow the New Jersey Superior Court, Appellate Division, to adjudicate Plaintiff's claims. Settled doctrines of federalism and equity jurisdiction support the proposition that this matter should be adjudicated, in the first instance, in the ongoing State proceedings.

## POINT IV

### PLAINTIFF'S CLAIM FOR SANCTIONS AGAINST DEFENDANTS MUST BE DENIED, AS PLAINTIFF'S SUBSTANCE USE DISORDER IS THE BASIS OF HIS COMPLAINT.

Defendants briefly address Dr. Allen's "Motion for Sanctions" filed with the Court on April 6, 2026, which consists of a single page proposed order. The proposed order asks this Court to find that there is protected substance use disorder information contained in Defendants' exhibits, specifically, the Certification of Antonia Winstead, Exhibits A and B, and

Certification of Daniel Roman Exhibits A and C. Plaintiff asks this Court to immediately redact all substance use disorder information, strike all portions of Defendant's Brief which rely on said information, "admonish" Defendants and their counsel for the unauthorized use of protected substance use disorder information pursuant to 42 C.F.R. Part 2, and referral to the U.S. Department of Health and Human Services, Office for Civil Rights for investigation.

First, Plaintiff fails to explain what information contained in the aforementioned exhibits would be considered protected information. Winstead Exhibit A is the 2022 Consent Order, (which is a public document), Exhibit B is the consumer complaint filed with the Board by Dennis Reilly, Medical Director at Ultracare outpatient Ambulatory Center, where Plaintiff worked during the January 2022 incident. Roman Exhibit A is the 2024 proposed Consent Order, Exhibit C is the cover letter and March 2026 proposed Consent Order. None of these documents contain protected substance abuse information. Further, Winstead Exhibit A is the same document Plaintiff attached to his opposition as Exhibit A,, the March 2022 Consent Order.

Second, Plaintiff claims that Defendant violated 42 C.F.R. Part 2. Part 2 consists of 34 separate codes. Plaintiff fails to explain to the court which regulation was violated by Defendants and/or counsel and how. If Plaintiff is claiming the documents submitted to the court discuss his prior substance abuse broadly, his own Complaint and attached documents discuss his substance abuse history in specific detail. Accompanying Plaintiff's complaint is a report from the Physician Assistance Program that describes the nature of Dr. Allen's impairment, current status and history of substance use. Additionally, Plaintiff's Exhibit C in support of his opposition to the motion to dismiss includes a psychiatric evaluation wherein his substance abuse history is discussed as well as his psychiatric diagnosis.

## CONCLUSION

For all the reasons set forth above, this Court should conclude that Plaintiff has failed to plead a cause of action upon which relief can be granted, and should dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

Jennifer Davenport
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Daniel Roman

Daniel Roman
Deputy Attorney General

NJ Attorney ID: 275882018

DATE: May 4, 2026