**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FREDERICK THOMAS ALLEN,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY BOARD OF MEDICAL EXAMINERS, *et al.*,<br><br>Defendants. | Civil Action No. 26-90 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon three motions: (1) Defendants New Jersey Board of Medical Examiners (the "Board"), Antonia Winstead ("Winstead"), and J. Nimisha Shukla's ("Shukla" and collectively with the Board and Winstead, "Defendants") First Motion to Dismiss (ECF No. 11) *pro se* Plaintiff Frederick Thomas Allen's ("Plaintiff") Complaint (ECF No. 1); (2) Plaintiff's Motion for Sanctions (ECF No. 14); and (3) Defendants' Second Motion to Dismiss (ECF No. 24[1]). Plaintiff opposed both motions to dismiss (ECF Nos. 12, 27) and replied in support of his own motion (ECF No. 26). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' Motions to Dismiss are granted, and Plaintiff's Motion for Sanctions is denied.

[1] Defendants' Second Motion to Dismiss seeks to supplement their initial First Motion to Dismiss and also serves as their opposition to Plaintiffs' Motion for Sanctions. (*See generally* Defs.' Second Mot. to Dismiss, ECF No. 24.)

# I. BACKGROUND[2]

## A. Factual Background

Plaintiff's Complaint arises from "intentional disability discrimination by a state licensing authority that imposed categorical and medically unjustified restrictions" on Plaintiff because of his "remote history of substance use disorder, despite overwhelming evidence of fitness for unrestricted practice." (Compl. ¶ 1, ECF No. 1.) Specifically, "Defendants'[3] conduct deprived Plaintiff of meaningful access to a public licensing program[]" which "foreclosed employment[] and imposed professional exclusion" because of stereotypes and assumptions prohibited by federal law. (*Id.* ¶ 2.)

Plaintiff is a board-certified anesthesiologist who completed residency training and "possesses the education, licensure, clinical experience, and professional competence necessary to perform the essential functions of an anesthesiologist." (*Id.* ¶ 18.) Plaintiff has a history of substance use disorder. (*Id.* ¶ 10.) Around January 2022, "Plaintiff underwent inpatient substance use disorder treatment at Caron Treatment Centers" and completed "structured partial hospitalization . . . and intensive outpatient . . . programs." (*Id.* ¶ 11.) After completing these programs, Plaintiff has "remained in continuous compliance" with physician monitoring programs and has maintained his sobriety. (*Id.* ¶ 12.) "Plaintiff was subject to random, unannounced drug testing through the New Jersey Physician Assistance Program ('NJ PAP')[.]" (*Id.* ¶ 13.) Plaintiff has submitted "hundreds" of toxicology test results to Defendants, which were all "negative for

[2] The Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff for the purpose of considering Defendants' motions to dismiss. *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

[3] The Board is a state agency. (Compl. ¶ 7.) Winstead is the Executive Director of the Board and "is responsible for implementing and enforcing licensing decisions." (*Id.* ¶ 8.) Shukla is the Chair of the Board and "is responsible for oversight and [has] final decision-making authority." (*Id.* ¶ 9.)

any non-prescribed or mind-altering substances," which demonstrated that Plaintiff has not relapsed or misused "an illicit or non-prescribed controlled substance." (*Id.* ¶ 14.) To "substantially reduce[] relapse risk and opioid craving[s,]" Plaintiff is prescribed and uses the extended-release naltrexone Vivitrol, an FDA-approved medication for the treatment of opioid use disorder. (*Id.* ¶ 15.) Plaintiff communicated to Defendants, "including during proceedings and discussions at a Physician Executive Committee . . . meeting, his commitment to remain on Vivitrol as part of his long-term recovery and patient-safety plan." (*Id.* ¶ 16.)

Plaintiff submitted evaluations to Defendants that were "current, individualized, [and] evidence-based" and all indicate that "Plaintiff poses no increased risk to patients, is medically and psychiatrically fit to practice anesthesiology, and requires no restriction, including no restriction on access to controlled substances." (*Id.* ¶¶ 19-21.) Notably, among other materials, Plaintiff submitted a professional recommendation from Dr. Louis Baxter, M.D. ("Dr. Baxter"), the Medical Director of NJ PAP, who reviewed Plaintiff's "treatment history, monitoring compliance, and clinical status[,]" and concluded that Plaintiff could practice anesthesiology "without categorical restrictions." (*Id.* ¶ 22.) Defendants, however, "disregarded Dr. Baxter's recommendation" and instead "imposed restrictions directly contrary to the conclusions of [New Jersey's] own designated physician health program leadership." (*Id.* ¶ 23.)

Plaintiff claims that his "treatment, monitoring, and clinical clearance" conform to accepted principles of national physician health programs (the "PHPs").[4] (*Id.* ¶ 26.) "Despite Plaintiff's qualifications and medical clearance" from his treating physicians," Defendants offered

---

[4] PHPs are "designed to protect patient safety" and enable "physicians with substance use disorders in sustained remission to safely return to clinical practice through individualized monitoring, objective testing, and professional oversight." (*Id.* ¶ 24.) Physicians who "demonstrate sustained sobriety" and continuously comply with PHP's requirements "are routinely cleared to resume full clinical duties[.]" (*Id.* ¶ 25.)

a consent order categorically prohibiting Plaintiff from accessing opioids." (*Id.* ¶ 30.) An anesthesiologist, however, "is required to provide safe care during routine and emergent clinical situations[,]" and access to controlled substances is an essential function of the job. (*Id.* ¶ 31.) These restrictions have made Plaintiff's job "impossible, made lawful employment unattainable, and created patient-safety risks in emergencies." (*Id.* ¶ 32.) Despite this, Defendants "refused to modify or rescind the restriction" and stated in communications with Plaintiff that Defendants are "unwilling to allow Plaintiff to practice anesthesiology[.]"[5] (*Id.* ¶¶ 33, 34.)

During the relevant time period, Plaintiff also "maintained an active and unrestricted medical license in . . . Pennsylvania." (*Id.* ¶ 38.) The Pennsylvania regulators "reviewed the same or substantially similar evidence regarding Plaintiff's sobriety, monitoring compliance, and clinical fitness." (*Id.* ¶ 39.) Pennsylvania, however, "imposed no restriction on Plaintiff's ability to practice anesthesiology or access controlled substances." (*Id.* ¶ 40.) According to Plaintiff, the disparity between Pennsylvania and New Jersey regulators "demonstrates that Defendants failed to conduct an individualized assessment and instead imposed a categorical exclusion based on disability." (*Id.* ¶ 42.) Because Pennsylvania hospitals, anesthesia groups, and credentialing bodies require disclosure of New Jersey's consent order, Defendants' actions "effectively foreclosed Plaintiff's ability to obtain or maintain anesthesiology employment in Pennsylvania" because Pennsylvania declined to credential or employ Plaintiff as a result of the consent order.[6] (*Id.* ¶ 43.)

---

[5] Plaintiff claims that "[t]he restriction was not imposed due to any present impairment, relapse, misconduct, or individualized risk assessment, but solely because of Plaintiff's disability history." (Compl. ¶ 35.) Moreover, no one on the Board reviewing Plaintiff's case was "a physician who is board certified or clinically trained in anesthesiology." (*Id.* ¶ 36.)

[6] Plaintiff claims that "Defendants' conduct therefore caused interstate professional exclusion and directly resulted in loss of anesthesiology employment opportunities in Pennsylvania, substantially increasing Plaintiff's economic damages." (Compl. ¶ 44.)

Furthermore, Plaintiff claims that Defendants "had actual knowledge that their actions would exclude Plaintiff from anesthesiology practice and deny meaningful access to a public licensing program[]" but still "proceeded with exclusionary restrictions." (*Id.* ¶¶ 52, 54.)

### B. Procedural Background

On January 6, 2026, Plaintiff filed his Complaint alleging two causes of action against Defendants: (1) violation of Title II of the Americans with Disabilities Act (the "ADA") ("Title II") ("Count One"); and (2) violations of Plaintiff's procedural due process rights ("Count Two"). (*Id.* ¶¶ 57-72.) Defendants subsequently filed their First Motion to Dismiss (Defs.' First Mot. to Dismiss, ECF No. 11) and Plaintiff opposed (Pl.'s First Opp'n Br., ECF No. 12). Plaintiff thereafter filed a Motion for Sanctions. (Pl.'s Mot. for Sanctions, ECF No. 14.) Defendants then filed their Second Motion to Dismiss, which also addressed arguments in opposition to Plaintiff's Motion for Sanctions (Defs.' Second Mot. to Dismiss), and Plaintiff opposed (Pl.'s Second Opp'n Br., ECF No. 27). Plaintiff also replied in further support of his own motion. (Pl.'s Reply Br., ECF No. 26.)

## II. <u>LEGAL STANDARD</u>

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure[7] 12(b)(1) must be granted if a court lacks subject-matter jurisdiction over a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A Rule 12(b)(1) motion "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citation omitted). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of [a plaintiff's]

[7] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

claims to comport [factually] with the jurisdictional prerequisites." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (alterations in original) (quotation marks and citation omitted).

When reviewing a facial challenge, the court must "accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff." *In re Kaiser Grp. Int'l Inc.*, 399 F.3d 558, 561 (3d Cir. 2005) (citation omitted). On the other hand, when reviewing a factual challenge, the court may "consider evidence outside the pleadings" and "[n]o presumptive truthfulness attaches to [the] plaintiff's allegations." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (second alteration in original) (citations omitted).

**B. Motion to Dismiss for Failure to State a Claim**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show

that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. <u>DISCUSSION</u>

The Court first turns to Defendants' Motions to Dismiss before addressing Plaintiff's Motion for Sanctions.

### A. Defendants' Motions to Dismiss

Defendants seek dismissal of Plaintiff's Complaint in its entirety because: (1) this Court "should decline from intervening in this state matter pursuant to the *Younger* doctrine" (Defs.' First Moving Br. 4, ECF No. 11-1); (2) Defendants are immune from suit under the doctrine of sovereign immunity; and (3) Plaintiff fails to state a claim upon which relief may be granted (Defs.' Second Moving Br. 9-22, ECF No. 24-1).[8] Plaintiff argues in opposition that: (1) *Younger* abstention is not appropriate here; (2) Defendants are not immune from suit; and (3) Plaintiff adequately states a claim upon which relief may be granted. (Pl.'s First Opp'n Br. 9-16; Pl.'s Second Opp'n Br. 3-9.) The Court turns to whether Defendants are immune from suit.

---

[8] Plaintiff argues, in relation to Defendants' Second Motion to Dismiss, that the Court should deny Defendants' "supplemental brief that materially expands their legal theories after the close of briefing." (Pl.'s Second Opp'n Br. 1.) Lack of subject matter jurisdiction and failure to state a claim, however, are not waivable defenses under Rule 12, and motions based on such defenses may be filed before or after filing an answer. Fed. R. of Civ. P. 12(h); *see Universal Prop. Servs. Inc. v. Lehigh Gas Wholesale Servs., Inc.*, No. 20-3315, 2022 WL 20805863, at *3 (D.N.J. Aug. 5, 2022). The Court, therefore, will consider the new arguments pertaining to those defenses raised in Defendants' Second Motion to Dismiss.

Defendants contend that they "are immune from suit under the doctrine of sovereign immunity." (Defs.' Second Moving Br. 9.) The Court agrees that Defendants are immune, and therefore, the Court lacks subject matter jurisdiction.

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment "has been interpreted to make states generally immune from suit by private parties in federal court[,]" and such immunity "extends to state agencies and departments." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001) (citations omitted). Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and is therefore "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).

Eleventh Amendment sovereign immunity is not absolute, however, and is limited by three exceptions: "(1) congressional abrogation[;] (2) state waiver[;] and (3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *Constantine v. N.J. Dep't of Banking & Ins.*, No. 22-2678, 2023 WL 2625007, at *3 (D.N.J. Mar. 24, 2023) (quoting *MCI Telecomm.*, 271 F.3d at 503), *aff'd*, No. 23-2423, 2024 WL 1988829 (3d Cir. May 6, 2024). The Court addresses each exception below, beginning with waiver.

### *1. Waiver*

First, the State of New Jersey has not waived its sovereign immunity. (*See* Defs.' Second Moving Br. 14 ("[T]he State of New Jersey has not waived its sovereign immunity with regard to suits brought in federal court against the State, its subdivisions, agencies[,] and officials[.]"

(citations omitted))); *MCI Telecomm.*, 271 F.3d at 503-04 ("[A] state may waive sovereign immunity by . . . . voluntarily invok[ing] [the court's] jurisdiction by bringing suit . . . or must make a clear declaration that it intends to submit itself to [the court's] jurisdiction." (quotation marks omitted) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 676 (1999)).

### *2. Prospective Relief*

Second, under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), "individual state officers can be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." *MCI Telecomm.*, 271 F.3d at 506. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted). *Young*, however, "does not apply if, although the action is nominally against individual officers, the state is the real, substantial party in interest and the suit in fact is against the state." *MCI Telecomm.*, 271 F.3d at 506.

Here, Plaintiff only brings his claims against Winstead and Shukla in their official capacities. (*See* Compl. ¶¶ 8, 9.) Moreover, Plaintiff claims that he "seeks prospective relief to remedy ongoing and future constitutional violations[,]" explicitly seeking such relief against "Winstead and Shukla in their official capacities . . . ." (*Id.* ¶¶ 71, 74; *see also id.* ¶ 70 ("Winstead and Shukla are responsible for enforcing the challenged practices and are sued *in their official capacities* for prospective declaratory and injunctive relief." (emphasis added)).)

Because Plaintiff does not specifically allege how Winstead and Shukla violated Plaintiff's rights in their *individual capacities*, the Court finds that the State, and not the individual defendants, is the real party in interest. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) ("[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)); *Levkovsky v. N.J. Advisory Comm. On Jud. Conduct*, No. 12-1007, 2012 WL 3715981, at *3 (D.N.J. Aug. 27, 2012) ("[I]t is well-settled that '[i]ndividual state employees sued in their official capacity' are entitled to immunity from suit—as such suits 'generally represent only another way of pleading an action against the state[.]'" (second alteration in original) (citations omitted)). The second exception, therefore, does not apply.

### 3. *Abrogation*

Because Plaintiff asserts a claim under Title II, the Court must inquire further as to whether Congress abrogated Defendants' Eleventh Amendment immunity for Plaintiff's ADA claims. *See Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002) (recognizing that Congress may abrogate a state's Eleventh Amendment immunity through its power to enforce the Fourteenth Amendment); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 556 (3d Cir. 2007) ("Congress acted within its Constitutional authority in abrogating sovereign immunity under Title II[.]"), *amended on reh'g* (Mar. 8, 2007). The Supreme Court upheld this congressional abrogation "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original).

To determine whether the abrogation exception to immunity applies, the Court considers:

> (1) which aspects of the State's alleged conduct violated Title II;
> (2) to what extent such misconduct also violated the Fourteenth

> Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* The Court, therefore, must first determine if the Complaint states a viable claim under Title II. *Bowers*, 475 F.3d at 553; *see also Geness v. Admin. Off. of Pa. Cts.*, 974 F.3d 263, 273 (3d Cir. 2020) (explaining that if a complaint's allegations fail to satisfy the first requirement under the test, then the court need not discuss the second and third requirements).

**a. Step 1: Alleged Violation of Title II**

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Moreover, "[a] public entity may not administer a licensing . . . program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability" or "establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(6). To state a claim under Title II, a plaintiff must allege: "(1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018) (alteration in original) (quoting *Bowers*, 475 F.3d at 553 n.32). Because Plaintiff seeks compensatory damages in connection with his Title II claim (*see* Compl. ¶¶ 75, 76), Plaintiff must

also sufficiently allege "that the public entity intentionally discriminated against him[.]"[9] *Geness*, 974 F.3d at 274 n.11 (citing *Haberle*, 885 F.3d at 181).

Here, Defendants do not dispute that substance abuse disorder is a disability under the ADA or that the ADA's protections apply to Plaintiff.[10] (*See* Defs.' Second Moving Br. 16.) With respect to the third and fourth elements, Plaintiff alleges that: (1) "Defendants denied Plaintiff meaningful access to a public licensing program by imposing eligibility criteria and restrictions that excluded Plaintiff by reason of disability" (Compl. ¶ 60); (2) Plaintiff "was subject to random, unannounced drug testing" through NJ PAP and "submitted hundreds of toxicology test results to Defendants, all of which were negative" for illicit substances (*id.* ¶¶ 13-14); (3) despite this evidence, the restrictions placed on Plaintiff's license were "not imposed due to any present impairment, relapse, misconduct, or individualized risk assessment, but solely because of Plaintiff's disability history" (*id.* ¶ 35); and (4) "Defendants had actual knowledge that their actions would exclude Plaintiff from anesthesiology practice and deny meaningful access to a public licensing program" but still "proceeded with exclusionary restrictions and communicated an unwillingness to allow Plaintiff to practice anesthesiology" which "constitutes deliberate indifference" (*id.* ¶¶ 52-55).

At this stage, the Court finds that Plaintiff adequately pleads both a violation of Title II and that Defendants acted with deliberate indifference. *See Washington v. City of Jersey City*, No. 24-8597, 2025 WL 1742694, at *12 (D.N.J. June 23, 2025) (denying motion to dismiss Title II claim where plaintiff alleged that defendants failed to accommodate when they knew of

---

[9] "To satisfy this element of intentional discrimination, a plaintiff must allege at least 'deliberate indifference,' which requires '(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge.'" *Geness*, 974 F.3d at 274 n.11 (alteration in original) (quoting *Haberle*, 885 F.3d at 181).

[10] The Court, therefore, need not address these elements of Plaintiff's Title II claim.

plaintiff's disability); *Jackson v. Seifried*, No. 20-17410, 2024 WL 1928513, at *8 n.10 (D.N.J. Apr. 30, 2024) (finding plaintiff adequately alleged a Title II claim under the first prong of the *Georgia* test); *C.M. ex rel. C.M. v. Pemberton Twp. High Sch.*, No. 16-9456, 2017 WL 2815069, at *5-6 (D.N.J. June 29, 2017) (finding complaint adequately alleged deliberate indifference where plaintiff claimed defendants were "well-aware of their obligations under federal laws prohibiting disability discrimination," "knew that [an individual] reported unlawful disability discrimination and yet . . . did not act[,]" and "lack[ed] . . . motivation and [their] inaction constitute[d] a denial of services offered").

**b. Step 2: Violation of Procedural Due Process**

Next, the Court turns to whether the alleged misconduct also violates the Fourteenth Amendment. *See Georgia*, 546 U.S. at 159. If Plaintiff alleges an actual constitutional violation, then Defendants cannot raise a sovereign immunity defense because "insofar as Title II creates a private cause of action for damages against [Defendants] for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Guttman v. Khalsa*, 669 F.3d 1101, 1113 (10th Cir. 2012) (emphasis in original) (quoting *Georgia*, 546 U.S. at 159).

Here, Plaintiff alleges (as noted in Count Two) a procedural due process violation.[11] (*See* Compl. ¶¶ 63-72.) Specifically, Plaintiff alleges that Defendants' actions "deprived Plaintiff of [his property and liberty] interests by imposing restrictions that rendered anesthesiology practice impossible[.]" (*Id.* ¶¶ 64-66.) According to Plaintiff, Defendants:

---

[11] Section 1983 operates as the procedural vehicle by which a plaintiff may bring a claim for a violation of constitutional rights in federal court. *See* 42 U.S.C. § 1983. To state a claim for procedural due process violations under Section 1983, "a plaintiff must allege that[:] (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property[;]' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citation omitted).

> deprived Plaintiff of his protected interests without constitutionally adequate procedural safeguards, including by failing to provide a meaningful opportunity to contest the factual basis for the categorical opioid restriction, refusing to engage in an individualized evidence-based assessment of Plaintiff's current fitness, disregarding unanimous independent clinical evaluations, and predetermining the outcome by expressing an unwillingness to allow Plaintiff to practice anesthesiology regardless of evidence.

(*Id.* ¶ 67.) Plaintiff claims that the "so-called consent process did not constitute meaningful process[.]" (*Id.* ¶ 68.) Plaintiff, however, fails to allege what "meaningful process" he was deprived of. (*Id.*) Beyond alleging that Defendants "disregarded unanimous independent clinical evaluations," Plaintiff does not specifically plead how Defendants disregarded the evaluations, whether Plaintiff was (or was not) provided a hearing, or what process Plaintiff should have been provided. (*See generally* Compl.); *see also Florentino v. City of Newark*, No. 19-21055, 2020 WL 5105291, at *9 (D.N.J. Aug. 31, 2020) ("As to procedural due process, the Court also notes that [p]laintiff's [c]omplaint fails to identify what process was owed." (citing *Washington v. Hanshaw*, 552 Fed. App'x 169, 174 (3d Cir. 2014))); *Beam v. Township of Pemberton*, No. 19-20380, 2023 WL 2496460, at *28 (D.N.J. Mar. 14, 2023) (noting that a plaintiff must allege that "the available procedures did not provide due process of law[]" (citations omitted)).

Moreover, both this Court and the Tenth Circuit have recognized that licensing agencies "ha[ve] authority to oversee the licensing process . . . in [the state]" and, therefore, Defendants "can determine whether they believe that applicants are an imminent danger to public safety through rejecting or remanding an application[.]" *Constantine*, 2023 WL 2625007, at *5; *Guttman*, 669 F.3d at 1115-16. With that, the Court finds that Plaintiff does not adequately allege a due process violation and next turns to the third step of the analysis.[12]

---

[12] Since Plaintiff fails to plead a violation of procedural due process, the Court finds that Count Two should be dismissed.

**c. Step 3: Sovereign Immunity Analysis**

The Court must next consider whether Title II abrogates sovereign immunity in the context of professional licensing. *See Constantine*, 2023 WL 2625007, at *5. Both this Court and the Tenth Circuit have determined that "Title II does not validly abrogate immunity" on the issue of professional licensing. *See id.*; *Guttman*, 699 F.3d at 1119. In *Constantine*, this Court found that "the issue is [p]laintiff's right to practice in his chosen profession[]" and that right is "not fundamental[,] [and] abrogation would inhibit the [s]tate's ability to make professional licensing decisions." 2023 WL 2625007, at *5. As a result, the Court held that "Title II did not validly abrogate immunity on this issue and [d]efendants are immune from the ADA claims." *Id.* Furthermore, in *Guttman*, the Tenth Circuit noted that there is "very little evidence of a widespread pattern of irrational state discrimination in professional licensing, and a wide-reaching statute that inhibits a state's ability to safely and efficiently make professional licensing decisions . . . is . . . 'out of proportion'" and concluded that Title II did not abrogate the state's "sovereign immunity in the context of professional licensing." 669 F.3d at 1124-25. Here, the Court agrees with the reasoning of this Court and the Tenth Circuit, and further acknowledges that the Board has the authority to "refuse to admit a person to an examination or may refuse to issue or may suspend or revoke any certificate, registration[,] or license issued by the board[.]" N.J. Stat. Ann. § 45:1-21.

Defendants, therefore, are immune from Plaintiff's Title II claim, and Count One must be dismissed.[13]

[13] Because the Court finds that Defendants are immune and that both Counts in the Complaint should be dismissed, the Court need not address Defendants' other arguments in favor of dismissal. *See Giordano v. Vilacoba*, No. 22-3294, 2024 WL 580153, at *2 n.3 (D.N.J. Feb. 13, 2024).

**B. Plaintiff's Motion for Sanctions**

The Court now turns to Plaintiff's Motion for Sanctions. (*See generally* Pl.'s Mot. for Sanctions.) Plaintiff argues that "sanctions and supplemental relief" are available pursuant to Local Civil Rule 5.3 and 42 C.F.R. Part 2 and requests that this Court: (1) redact Plaintiff's substance use disorder ("SUD") information; (2) "[s]trike any portions of Defendants' Motion to Dismiss brief and certifications that rely upon or reference" Plaintiff's SUD records; (3) "[a]dmonish" Defendants and their counsel; (4) "[r]efer the violation" to the United States Department of Health and Human Service Office for Civil Rights; and (5) grant "such other and further relief as the Court deems just and proper." (*Id.* at *1[14].) Plaintiff fails to identify what information would constitute protected information and fails to articulate what part(s) of 42 C.F.R. Part 2 he alleges Defendants violated. (*See generally id.*) Without more, the Court denies Plaintiff's Motion for Sanctions.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are granted and Plaintiff's Motion for Sanctions is denied. The Court will issue an Order consistent with this Memorandum Opinion.

MASHipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: 8/12/26

[14] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.