**MOTION DAY: SEPTEMBER 21, 2026**
**ORAL ARGUMENT NOT REQUESTED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FREDERICK THOMAS ALLEN, M.D.,<br>Plaintiff,<br>v.<br>NEW JERSEY BOARD OF MEDICAL EXAMINERS; ANTONIA WINSTEAD, in her<br>official capacity; and CHETAN S. SHAH, M.D.,<br>in his official capacity,<br>Defendants. | Civil Action No.<br>26-90 (MAS) (RLS)<br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION, TO ALTER OR AMEND THE JUDGMENT, AND FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT 4
STANDARD ON RECONSIDERATION AND POST-JUDGMENT AMENDMENT 5
I. REOPENING AND RULE 15 ARE THE NARROWEST RELIEF 5
II. EX PARTE YOUNG SUPPORTS THE OFFICIAL-CAPACITY CLAIMS 7
III. TITLE II REQUIRES CLAIM-BY-CLAIM GEORGIA/BOWERS ANALYSIS 9
IV. SECTION 504 IS AN INDEPENDENT WAIVER ROUTE 10
V. THE DISABILITY CLAIMS TURN ON CURRENT OBJECTIVE RISK 13
VI. THE CONTROVERSY IS PRESENTLY JUSTICIABLE 16
VII. THE ALTERNATIVE DUE-PROCESS COUNT IS PARTICULARIZED 17
CONCLUSION 18

## TABLE OF AUTHORITIES

**Cases**

ACRA Turf Club, LLC v. Zanzuccki, 748 F.3d 127 (3d Cir. 2014)
Bowers v. NCAA, 475 F.3d 524 (3d Cir. 2007)
Constantine v. N.J. Dep't of Banking & Ins., No. 22-2678, 2023 WL 2625007 (D.N.J. Mar. 24, 2023), aff'd on other grounds, No. 23-2423, 2024 WL 1988829 (3d Cir. May 6, 2024)
Cureton v. NCAA, 252 F.3d 267 (3d Cir. 2001)
Durham v. Kelley, 82 F.4th 217 (3d Cir. 2023)
Ellen S. v. Fla. Bd. of Bar Exam'rs, 859 F. Supp. 1489 (S.D. Fla. 1994)
Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247 (3d Cir. 2007)
New Directions Treatment Servs. v. City of Reading, 490 F.3d 293 (3d Cir. 2007)
Foman v. Davis, 371 U.S. 178 (1962)
Fuentes v. South Hills Cardiology, 946 F.2d 196 (3d Cir. 1991)
Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002)
Guttman v. Khalsa, 669 F.3d 1101 (10th Cir. 2012)
Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 551 F.3d 193 (3d Cir. 2008)
Jang v. Boston Scientific Scimed, Inc., 729 F.3d 357 (3d Cir. 2013)
Kemp v. United States, 596 U.S. 528 (2022)
Kentucky v. Graham, 473 U.S. 159 (1985)
Koslow v. Pennsylvania, 302 F.3d 161 (3d Cir. 2002)
Mathews v. Eldridge, 424 U.S. 319 (1976)
MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491 (3d Cir. 2001)
Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669 (3d Cir. 1999)
Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113 (3d Cir. 1998)
Sch. Bd. of Nassau Cnty. v. Arline, 480 U.S. 273 (1987)
Patsy v. Bd. of Regents, 457 U.S. 496 (1982)
Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984)
Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008)
Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013)
Strathie v. Dep't of Transp., 716 F.2d 227 (3d Cir. 1983)
T.W. v. N.Y. State Bd. of Law Exam'rs, 996 F.3d 87 (2d Cir. 2021)
Teahan v. Metro-North Commuter R.R., 951 F.2d 511 (2d Cir. 1991)
United States v. Georgia, 546 U.S. 151 (2006)
Verizon Md. Inc. v. Pub. Serv. Comm'n, 535 U.S. 635 (2002)
Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989)

**Statutes, Regulations, Rules, and Other Authorities**

29 U.S.C. §§ 705(20)(C)(ii), 794, 794a; 42 U.S.C. §§ 1983, 2000d-7, 12132, 12210(b)
28 C.F.R. §§ 35.130(b)(1), (b)(3)(i), (b)(6)-(8), (f), (h), 35.139(b); 28 C.F.R. pt. 35, app. B
Fed. R. Civ. P. 15, 25(d), 54(b), 59(e), 60(b)(1); Fed. R. Evid. 201(b)(2)
D.N.J. L. Civ. R. 5.3, 7.1(i), 7.2, 15.1, 78.1
N.J.S.A. 45:1-14, 45:1-17, 45:1-45(a), 52:17B-120; N.J.A.C. 13:35-11.2, 13:35-11.5

## PRELIMINARY STATEMENT

This motion seeks a modest procedural remedy following a dismissal without prejudice: reopen the judgment sufficiently to permit Plaintiff's first prompt curative amendment. The Court held that the original Complaint adequately pleaded both a violation of Title II and deliberate indifference. Op. 12. It dismissed on immunity grounds because the Complaint did not specifically allege how the individual officers violated Plaintiff's rights, Op. 10, and did not identify what process was owed or denied, Op. 14. The proposed First Amended Complaint ("FAC") preserves the Title II holding and is directed at those two identified deficiencies. It also abandons all damages and seeks only prospective relief, which removes the predicate for the step-three abrogation analysis the Court reached at Op. 15.

The narrowest path does not require the Court to revisit every aspect of its prior analysis. There has been no prior amendment, answer, discovery, or wait-and-see strategy, and Plaintiff moved within the Local Civil Rule 7.1(i) period.

The FAC pleads two further routes that make a futility finding inappropriate now: the claim-by-claim Title II framework of United States v. Georgia, 546 U.S. 151 (2006), and Bowers v. NCAA, 475 F.3d 524 (3d Cir. 2007); and an independent Section 504 waiver theory under 42 U.S.C. § 2000d-7 and Haybarger v. Lawrence County Adult Probation & Parole, 551 F.3d 193 (3d Cir. 2008).

## STANDARD ON RECONSIDERATION AND POST-JUDGMENT AMENDMENT

Reconsideration under Local Civil Rule 7.1(i) requires an intervening change in controlling law, new evidence, or the need to correct a clear error or prevent manifest injustice. Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Plaintiff invokes the third ground only.

Because a judgment has been entered, it must be reopened before an amended pleading may be filed. Fed. R. Civ. P. 59(e); Jang v. Boston Scientific Scimed, Inc., 729 F.3d 357, 367-68 (3d Cir. 2013). Where a timely Rule 59(e) motion is joined with a tendered curative pleading, the Rule 59 and Rule 15 inquiries overlap. Cureton v. NCAA, 252 F.3d 267, 272 (3d Cir. 2001). To the extent the dismissal without prejudice is not final, the Order remains subject to revision under Rule 54(b). Plaintiff invokes Rule 54(b) only in the alternative; Rule 59(e) is timely and remains his primary vehicle. And to the extent Rule 59(e) is unavailable, Rule 60(b)(1) reaches a court's own mistakes of law. Kemp v. United States, 596 U.S. 528, 533-34 (2022).

## I. REOPENING AND RULE 15 ARE THE NARROWEST RELIEF

Rule 15 directs that leave to amend be freely given when justice requires, absent undue delay, bad faith, repeated failure to cure, undue prejudice, or futility.

Foman v. Davis, 371 U.S. 178, 182 (1962); Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007).

Every Foman factor favors a first curative amendment. The dismissal was without prejudice; no answer or discovery has occurred; Plaintiff tendered the amendment immediately after the ruling identifying the defects; and the amendment narrows the case by abandoning all damages. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002), and Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008), reinforce the obligation in civil-rights cases to permit amendment where a defect can be cured. Cureton and Jang do not counsel otherwise: in each a represented plaintiff had prior opportunities to amend and sought post-judgment changes after extensive litigation. Cureton, 252 F.3d at 273; Jang, 729 F.3d at 368-69. Here there was neither prior amendment nor tactical withholding. That some amplifying facts predate the Complaint does not change the analysis: the relevant Foman factor is repeated failure to cure by amendments previously allowed, and none was allowed; delay without prejudice does not justify denial; and the deficiencies were first identified on August 12, twelve days before this filing. Many of the amplifying facts, moreover, postdate the Complaint. Rule 15(d) permits a supplemental pleading setting out events that happened after the date of the pleading to be supplemented, and permits it "even though the original pleading is defective in stating a claim or defense."

## II. EX PARTE YOUNG SUPPORTS THE OFFICIAL-CAPACITY CLAIMS

The Opinion identified a specific pleading gap: “Plaintiff does not specifically allege how Winstead and Shukla violated Plaintiff's rights,” and therefore found the State the real party in interest under Pennhurst. Op. 10. The FAC is directed at that gap. Plaintiff does not ask the Court to disturb its reading of MCI Telecommunications Corp. v. Bell Atlantic Pennsylvania, 271 F.3d 491, 506 (3d Cir. 2001); the question the Opinion applied — whether the State is the real, substantial party in interest — turns on the officers' connection to the challenged ongoing conduct. The same opinion states the exception as “suits against individual state officers for prospective relief to end an ongoing violation of federal law.” Id. at 503; accord Will, 491 U.S. at 71 n.10; Verizon Md., 535 U.S. at 645; Koslow, 302 F.3d at 178-79.

The FAC pleads the ongoing violation with specificity. The March 9, 2026 letter did more than transmit an offer: after reciting a current demonstration of fitness, it asserted that the historical risks “would continue unabated unless your license is conditioned and limited at this time.” Ex. A at 4. Board counsel later made the consequence clearer: “absent your express agreement to those terms and conditions, you have failed to demonstrate adequate fitness, competency and/or cause to support restoration of an unrestricted license.” Ex. B at 10-11. Four months after the letter, with this action pending, counsel confirmed that “it remains

the position of the Board" that those conditions "are fully necessary." Ex. B at 10. Together those statements plausibly allege that agreement to the disputed conditions is itself the Board's measure of fitness. The violation alleged is not the historical issuance of a proposal that has since expired. It is Defendants' present maintenance of a licensing determination that withholds unrestricted reinstatement unless Plaintiff accepts the challenged disability-related conditions — a present barrier, not a residual consequence of a completed act.

The FAC now pleads what the original Complaint did not: what each officer does, in the ongoing course of conduct, that the relief would run against. Winstead administers and implements Board licensing determinations, processes reinstatement petitions, transmits Board decisions, and handles requests for reconsideration, further appearances, and OAL transmittal; by regulation she also serves in connection with the Board's Impairment Review Committee. N.J.A.C. 13:35-11.2. The Board President presides over the body that made and would revisit the determination and executes Board orders; Rule 25(d) governs succession from the former Chair. Those allegations identify the officers as the persons through whom prospective relief would operate — the showing the Opinion found absent.

## III. TITLE II REQUIRES CLAIM-BY-CLAIM GEORGIA/BOWERS ANALYSIS

The Court's step-three analysis rested on Constantine v. New Jersey Department of Banking & Insurance, No. 22-2678, 2023 WL 2625007, at *5 (D.N.J. Mar. 24, 2023), and Guttman v. Khalsa, 669 F.3d 1101 (10th Cir. 2012). Op. 15. Two features of the amended pleading make it inapposite.

First, the district court's abrogation rationale in Constantine was not adopted on appeal. The Third Circuit affirmed "but for different reasons than those adopted by the District Court," resolving the case at Georgia step one because the plaintiff "does not allege facts supporting that the DOBI or REC engaged in intentional discrimination amounting to deliberate indifference" — a requirement that applied only "[b]ecause Constantine seeks compensatory damages." 2024 WL 1988829, at *2-3. The panel also observed that Ex parte Young was not at issue because Constantine, having obtained his license, sought no injunctive relief. Id. at *2 n.4. Plaintiff's posture is the opposite on both points. Op. 12.

Second, the proposed pleading no longer requires the Court to resolve Title II abrogation. Georgia sustained abrogation "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment," 546 U.S. at 159, and the Opinion quoted that formulation. Op. 10, 13. The original Complaint sought compensatory damages,

Compl. ¶¶ 75-76, and the Opinion required deliberate indifference for that reason. Op. 11. The FAC abandons all damages, and Count I now seeks prospective relief solely from the responsible officials under Ex parte Young. Sovereign immunity does not bar such relief. If the pleading gap identified at Op. 10 is cured, the Court need not decide whether Title II validly abrogates immunity for a damages claim in this licensing context.

Should the Court reach it, Georgia requires a claim-by-claim analysis, and Bowers applies it here. 546 U.S. at 159; Bowers, 475 F.3d at 553-56 & n.35. The holding at Op. 12 satisfies step one and directs the analysis to step two, where the FAC now supplies the procedural facts the Court found missing. Op. 13-14.

## IV. SECTION 504 IS AN INDEPENDENT WAIVER ROUTE

Section 504 does not depend on Title II abrogation. Congress conditioned acceptance of federal assistance on waiver of Eleventh Amendment immunity for Rehabilitation Act claims. 42 U.S.C. § 2000d-7; Koslow, 302 F.3d at 167-75. The statute defines the covered "program or activity" as "all of the operations of" a state "department [or] agency" "any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b)(1)(A). Haybarger applies that text structurally: once the recipient department is identified, coverage reaches all of its operations, not only the subunit that spends the federal dollars. 551 F.3d at 199-203. Durham

v. Kelley, 82 F.4th 217, 227 (3d Cir. 2023), addresses ADA waiver, not Section 504's distinct Spending Clause waiver, which operates by acceptance of funds.

The FAC pleads official records rather than a statewide-funding inference. New Jersey Treasury's FY2025 Federal Funds report classifies Assistance Listing 16.754 — the Prescription Drug Monitoring Program — under the Department of Law and Public Safety; the State's audited FY2025 Schedule of Expenditures of Federal Awards independently reports expenditures under that same Assistance Listing with nothing passed through to subrecipients; and official OJP records identify the Department as the recipient of an FY2024 Byrne State Crisis Intervention Program award, under a solicitation specifying an October 1, 2024 start date and a thirty-six-month duration. Ex. E.

Strathie v. Department of Transportation, 716 F.2d 227, 229-32 (3d Cir. 1983), involved state licensing under Section 504 and did not condition coverage on whether federal dollars were earmarked for that function. T.W. v. New York State Board of Law Examiners, 996 F.3d 87 (2d Cir. 2021), is distinguishable: there the board was unrelated to the federally funded units and the plaintiff relied on a judiciary-umbrella theory. The relationship pleaded here is structural. New Jersey law locates the Board within the Division of Consumer Affairs, established within the Department of Law and Public Safety; the same Division administers controlled-substance registration and the federally assisted Prescription Monitoring

Program; and the challenged order restricts precisely that activity. N.J.S.A. 52:17B-120, 45:1-14, 45:1-45(a); N.J.A.C. 13:45H. That is programmatic overlap, not an umbrella inference.

Count II also pleads qualification and sole causation. Menkowitz v. Pottstown Memorial Medical Center, 154 F.3d 113, 124-25 (3d Cir. 1998), is precedential and on point: the Third Circuit reversed a Rule 12(b)(6) dismissal of a physician's Section 504 claim, holding that a plaintiff “generally need not explicitly allege the existence of every element in a cause of action” and that the pleaded circumstances permitted an inference of exclusion solely by reason of disability. Surveying causation, the court noted that the “solely by reason of” limitation targets claims where the entity can point to circumstances causally unrelated to the disability, see Teahan v. Metro-North Commuter R.R., 951 F.2d 511, 515 (2d Cir. 1991), and held that contrary inferences alone will not justify dismissal, Fuentes v. South Hills Cardiology, 946 F.2d 196, 202 (3d Cir. 1991).

Defendants identify no contemporaneous act, relapse, monitoring failure, practice deficiency, or current clinical finding causally independent of the disability history. Historical conduct may explain why the Board scrutinized the license; it does not establish why these restrictions remain necessary in 2026.

If Count II requires further development, it remains severable; uncertainty about one count should not defeat the Title II and Ex parte Young amendment.

## V. THE DISABILITY CLAIMS TURN ON CURRENT OBJECTIVE RISK

Plaintiff does not deny the Board's public-safety authority. The federal question is whether each disability-related condition satisfies the individualized, current-evidence requirements Title II imposes; that a conditional license was offered does not answer it. A licensing authority may discriminate by placing unnecessary burdens on applicants with disabilities, “and this discrimination can occur even if these applicants are subsequently granted licenses.” Ellen S. v. Fla. Bd. of Bar Exam'rs, 859 F. Supp. 1489, 1494 (S.D. Fla. 1994).

The chronology runs opposite to a current-risk assessment. In connection with the December 2023 determination the Board proposed a Consent Order imposing no controlled-substance restriction at all and providing that if Plaintiff wished to practice anesthesiology, his Employer Physician must be an anesthesiologist. A later proposal barred him from possessing or having direct access to controlled substances; the 2026 proposal retained those restrictions and prohibited anesthesiology outright. In that interval Plaintiff remained abstinent and PAP-compliant, completed Pennsylvania’s Voluntary Recovery Program, finished the fellowship, and became board certified. An assessment resting on current evidence does not tighten as that evidence improves, and Defendants have identified no current evidence explaining that escalation. The day after the determination, the Executive Medical Director of the Board-required assistance

program wrote directly to Defendant Winstead reporting continued compliance, consistently negative screens, over four years of documented recovery, and support for reinstatement without restrictions. That letter is in Defendants' possession; bearing a 42 C.F.R. pt. 2 notice, it is not filed publicly and will be provided under Local Civil Rule 5.3 at the Court's direction. Plaintiff also proposed concrete 2024 safeguards — team separation, medically necessary handling, daily reconciliation, and dispensing-system audits — which the Board voted to reject. 28 C.F.R. § 35.130(b)(7)(i).

The offer was therefore not a usable license. Restrictions materially equivalent to those proposed would have prevented the fellowship Plaintiff completed and the hospital practice he performs today, where he serves as a Medical Director. Anesthesiology is the specialty in which he is board certified and for which the independent evaluation concluded he was safe to return. Board counsel invited a counter-proposal; Plaintiff replied the same day asking what concern each disputed restriction addressed. No answer came. Declining terms that would foreclose the practice they purport to authorize is not a waiver of the claim that the terms discriminate.

Qualification is strongly pleaded. The Board itself recited that Plaintiff "has made a current demonstration of fitness to return to the practice of medicine and surgery," subject to the challenged conditions. Plaintiff is dual board certified,

completed an ACGME Addiction Medicine fellowship, and practices under an unrestricted Pennsylvania license with DEA authority and CDS access. The Board did not lack current clinical evidence; it departed from it. Where the State compels participation in its own monitoring program and that program reports favorably, departure from it makes a restriction-specific explanation especially important.

The regulations require more than generalized concern. Sections 35.130(b)(1) and (b)(3)(i) reach discrimination through licensing arrangements and discriminatory criteria or methods of administration; (b)(6) reaches licensing programs; (b)(8) bars eligibility criteria that screen out individuals with disabilities unless shown necessary; (b)(7)(i) requires reasonable modifications; and (h) requires safety requirements to rest on actual risks rather than speculation, stereotypes, or generalizations. The FAC separates each condition rather than attacking them as a bloc.

The Board's necessity rationale is a single undifferentiated sentence predicting that historical risks "would continue unabated." Ex. A at 4. Board counsel later put it plainly: the restrictions are necessary "based on your actions and conduct which preceded the entry of the Board Order accepting the surrender of your license." Ex. B at 10. That grounds the 2026 conditions wholly in pre-2022 conduct. Sections 35.130(b)(8) and (h) ask whether each condition is necessary now, on current evidence. The Board's stated rationale identifies no current clinical

finding, distinguishes among none of the conditions, and states no period for which any is necessary.

This Circuit has already applied that principle to people with a history of opioid dependence. In New Directions Treatment Services v. City of Reading, 490 F.3d 293, 302-04 (3d Cir. 2007), the Court held a statute facially singling out methadone clinics invalid under both Title II and Section 504, emphasizing that these statutes protect individuals “from deprivations based on prejudice, stereotypes, or unfounded fear” and that hypothetical or presumed risk will not do. See Arline, 480 U.S. at 287.

## VI. THE CONTROVERSY IS PRESENTLY JUSTICIABLE

The FAC distinguishes the expired March 2026 conditional offer from the continuing injury: it alleges that Defendants continue to withhold unrestricted reinstatement and continue to condition it on the challenged restrictions, that no later determination has superseded or withdrawn that position, and that Plaintiff remains unable to practice in New Jersey. That is a present licensing status, not a residual effect of a past decision.

Younger does not make amendment futile; the Court did not reach it. Op. 15 n.13. No state judicial or quasi-criminal enforcement proceeding exists to which Younger requires deference. Plaintiff submitted a notice of appeal to the Appellate Division in March 2026 and withdrew it; nothing state-side is pending. The Office

of Administrative Law cannot act absent transmittal, Ex. G, and Plaintiff's remaining requests are applicant-initiated. Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 78 (2013), confines Younger to three exceptional categories, none present. This Circuit applied that framework in ACRA Turf Club, LLC v. Zanzuccki, 748 F.3d 127, 138-39 (3d Cir. 2014), reversing Younger abstention where the state proceeding was initiated not by the State but by private parties who voluntarily submitted petitions to a New Jersey agency for review. Nor is exhaustion a prerequisite. Patsy v. Board of Regents, 457 U.S. 496 (1982). Board counsel stated that reconsideration, a further appearance, and OAL treatment were deferred because of this litigation; that deferral cannot also eliminate the federal forum.

## VII. THE ALTERNATIVE DUE-PROCESS COUNT IS PARTICULARIZED

The Opinion identified four omissions — the process denied, how the evaluations were disregarded, whether a hearing was provided, and what process was owed. Op. 14. The FAC answers each. No adjudicatory hearing has occurred, and the Office of Administrative Law advised Plaintiff in writing that it acquires jurisdiction only upon an agency's contested-case determination and formal transmittal, and therefore “must wait for a determination by the Board of Medical Examiners to transmit” his case. Ex. G. Plaintiff requested reconsideration, a further appearance, and contested-case treatment; each was deferred and none has

been determined. The determination recites consideration of the favorable current evidence and finds a current demonstration of fitness, yet states no reason why any disputed restriction remains necessary. The FAC states the process sought: notice of the restriction-specific factual basis and an opportunity to contest it. Plaintiff asserts no entitlement to a preferred forum or to confidential files. Mathews v. Eldridge, 424 U.S. 319, 335 (1976), supplies the framework.

The authority the Opinion cited assumes such a mechanism: a licensing agency may act "through rejecting or remanding an application." Op. 14 (quoting Constantine, 2023 WL 2625007, at *5). In Constantine the agency transmitted the denial, an administrative law judge developed the record, and licensure followed. 2024 WL 1988829, at *1-2. Plaintiff's comparable requests have been neither granted nor denied, and no completed process has tested the conditions' necessity.

## CONCLUSION

The Court should reopen this action to permit Plaintiff's first curative amendment. If Count II or Count III is deemed premature, leave should be granted as to the remaining Counts.

Respectfully submitted,
/s/ Frederick Thomas Allen, M.D.
Frederick Thomas Allen, M.D., MBA, Plaintiff Pro Se
1050 N. Kimbles Road, Yardley, PA 19067 | (215) 290-0864
fredallenmd@gmail.com | Dated: August 25, 2026